Homer Clyde HAYSLIP, Individually and doing business as Textag Control Systems, Bankrupt, Appellant,

v.

George J. LONG, Creditor, and Claude Hambrick, Trustee, Appellees.

No. 15318.

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1955.

Grace W. Thomas, R. B. Pullen, Atlanta, Ga., for appellant.

Henry M. Hatcher, Jr., Johnson, Hatcher & Meyerson, Atlanta, Ga., for appellee George J. Long.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the bankrupt from an order of the District Court affirming a judgment of the referee denying bankrupt's discharge, overruling a motion for review of the order of the referee denying discharge, and overruling a motion to re-refer objections to discharge to the referee for further findings.

The objector, Long, and the referee, on the hearing of the objections to discharge, proceeded on the assumption that a judgment in a civil action to which both the bankrupt and Long were parties, holding that a conveyance from the bankrupt to his wife approximately four and one-half months prior to bankruptcy was "fraudulent," was res judicata as to the bankrupt's right to a discharge. The referee, having held in favor of the objector, denied the discharge on that ground, although other evidence was introduced for and against the bankrupt at the hearing.

If the referee erred as a matter of law in his conclusion that he was bound by the prior judgment, then his order denying the discharge must be reversed and the matter returned to him for a finding on all the evidence, notwithstanding the intervening action of the District Court affirming his order.

The facts necessary to a determination of the issue before us are undisputed.

Hayslip was the half owner of a patent relating to laundry marking, and he held a license from the other half owner to conduct a business under the patent. Long advanced funds to Hayslip under an agreement whose terms are not here material. A relatively short time before Hayslip's bankruptcy the two parties disagreed and Long filed suit in the state court seeking judgment for $10,800. Pending this suit Hayslip transferred his patent and license rights to his wife and son. Approximately one month later Long obtained judgment against Hayslip for the amount claimed. Thereupon Long sought and obtained an injunction prohibiting Hayslip and his wife from continuing in the operation of the business. Several months later, Hayslip filed his voluntary petition in bankruptcy. In his schedule he listed on the appropriate sheet, indicating transfers, information as to his conveyance to his wife, asserting that it had been made for full consideration, of which $200 was asserted to be in cash and over $11,000 in past consideration.

Long purchased the bankrupt's assets at the trustee's sale, it now being conceded by all parties that these assets included whatever interest still remained in the bankrupt or his estate in the rights sought to be conveyed by him to his wife under the accused transfer. Long sold the patent rights to Ross M. Goddard and others who commenced using the patent in the operation of a new business. Thereupon, Black, the owner of the original one-half interest in the patent, together with Mrs. Hayslip and her son, obtained counsel seeking to enjoin Goddard from what they alleged to be an infringement of their patent. This action was commenced in the federal district court. Counsel employed by the plaintiffs sought and obtained bankrupt's permission to name him as a joint plaintiff. This suit proceeded to judgment while Hayslip's bankruptcy proceedings were still pending and after Long had filed his objection to Hayslip's discharge. Long sought and was granted permission to intervene in the civil action, and both he and the defendants sought to defeat the action on the ground that the plaintiffs had no interest in the patent since, as they alleged, their title depended on the conveyance from Hayslip, which they alleged to be fraudulent. The specific allegations as to fraud were:

(1) By the defendants:

"The conveyance to Mrs. Hayslip and to Clyde Ward Hayslip, wife and son of Homer C. Hayslip, is absolutely void in that the conveyance was made by the grantor, Mr. Hayslip, on the eve of bankruptcy without a bona fide and valuable consideration and for the fraudulent purpose of delaying, defeating and defaulting creditors."

(2) By the intervenor, Long:

"The conveyance from Homer C. Hayslip to his wife and son, Mrs. Birdie Ward Hayslip and Clyde Ward Hayslip, is fraudulent, null and void on the following grounds:

"(a) The assignment of the patent was a fraudulent conveyance made without valuable consideration while Homer C. Hayslip was insolvent.

"(b) Despite the assignment, Homer C. Hayslip retained to himself actual control and ownership of the patent and full use and enjoyment thereof.

"(c) The assignment was made with the intention to delay and defraud the creditors of Homer C. Hayslip and this intention was known to his wife and son, who had full knowledge of his insolvency and of the then pending suit of intervenor."

The jury found by its verdict merely that the conveyance was fraudulent without the specific finding which must be the basis of a successful attack by the objector to bankrupt's discharge, i. e., that the conveyance amounted to a transfer of property "with intent to hinder,

delay or defraud his creditors." The part of the record of the civil action tendered by Long on the trial before the referee does not disclose the actual issue presented to the jury on this trial. Such issue could be shown only by considering the judge's charge and the form of the special questions presented to the jury. On the record presented, however, it does appear that objector himself sought a jury verdict that the conveyance was fraudulent and he alleged that the fraud element might be found present on any one of three theories as asserted under (2) above. The question, therefore, that is now presented to us is whether the word "fraudulent," as used by the jury, excludes every other construction except the one assigned by Long as the third possibility under (2) (c).

■ We think that in the state of the record before us, assuming as we must that the issues presented to the jury included the several theories asserted in Long's intervention, no such exclusive meaning can be attributed to the word "fraudulent." There was thus a failure by the objector to prove the essential element in his plea of res judicata, that is the identity of the issue decided in the case relied upon.

In conformity with the assertion of Long himself, the jury might well have concluded that the conveyance from Hayslip to his wife and son was fraudulent under grounds (a) or (b). Long's allegation that the conveyance was fraudulent because made "with intention to delay and defraud the creditors of Homer C. Hayslip" was only one of the three bases on which the jury could make its finding.

■ There can be no dispute but that the burden of proof is on the persons objecting to the discharge, and the burden resting on them is to prove the specific grounds alleged in the specifications.[1]

The specific ground asserted here appears in § 14, sub. c(4) of the Bankruptcy Act.[2]

■■ The proof required is not satisfied merely by a showing of a fraudulent conveyance unless the fraud infecting such conveyance includes the specific intent to defraud creditors. Neither is it satisfied merely by proof of an intent to prefer creditors.[3]

■ It should take no citation of authorities to support this proposition, for the sole basis of recognizing the principle of res judicata is that there is an identity of issue in the earlier case with that in the trial in which it is pleaded.[4] There can be no identity of issue here unless we can construe the words "fraudulent conveyance" as used by the jury in the civil action, as being synonymous with the words "property transferred with an intent to defraud creditors." This we cannot do in light of the contention by the objector himself that the conveyance was fraudulent on two theories other than that described in the Bankruptcy Act.

■ It should immediately appear also that this is not a sterile application of a technical distinction since, as must be conceded, the discharge provision of the Bankruptcy Act is a salutary remedial provision intended to permit insolvent debtors to be relieved from their burden of obligations if they conform to the other requirements of the law. It further appears that the determination as to whether such bankrupt has complied with the act or whether he has violated one of the prohibitions that would deprive him of his discharge is confided to the Bankruptcy Court as embodied in the person of the referee. The judg-

1. See Collier on Bankruptcy, 14th Ed., § 14.12, and cases cited.

2. 11 U.S.C.A. § 32, sub. c(4).

3. See Rutter v. General Motors Acceptance Corp., 10 Cir., 70 F.2d 479, and see generally Remington on Bankruptcy, 5th Ed., Vol. 7, § 3430, pp. 677 and 678.

4. See Restatement, Judgments, § 68(2), Comment 1, page 306.

ment of the official thus made responsible for a determination of these critical facts should not lightly be coerced by findings made by other tribunals. In this connection the language of the court in a district court case is persuasive. It was there said:

"The duty of the referee required him to exercise an independent judgment on the facts brought before him, not to follow the judgment of another tribunal on facts brought before it, although the identical question was tried out before it, and on substantially the same facts." In re Cohen, D.C., 192 F. 751, 752.

This is not to say that the plea of res judicata is never available to litigants in the bankruptcy court. It is to say, however, that the history of the bankruptcy laws and the exclusiveness of federal jurisdiction over the subject matter should cause the referee to exercise the most critical discrimination before finding that his judgment on the granting or refusal of a discharge must be coerced by a judgment or decision of another tribunal.

That this is so is made especially clear from a consideration of the circumstances under which the jury verdict here offered as a bar to the bankrupt's discharge was returned. Putting to one side the question as to whether Hayslip would normally be bound by a verdict and judgment in which he had only a nominal, if any, interest (it appearing as a matter of law that he could have had no interest as plaintiff in the civil action here involved) it is nevertheless apparent that the real issue of Hayslip's right to a discharge in bankruptcy was not before the court or jury in the civil action brought to recover damages for alleged infringement, and in which the issue of fraudulent conveyance was raised by answer and intervention. Although it must be conceded that the mere fact that what may be thought an inequitable result will follow may not prevent application of the doctrine of res judicata, the unfairness of binding the bankrupt on his application for discharge by a judgment entered in a case in which that was not an issue, further cautions the bankruptcy court and those reviewing its action, to be extremely chary in making its decision on this matter subservient to the finding of another tribunal in an entirely different case.

We find no merit in the contention by the objector that the discharge should be denied on the ground that it became apparent that the bankrupt swore falsely in his schedule by stating the consideration which he claimed had been given by his wife and son for the void conveyance. This contention is premised on the assertion by appellee that the jury's finding that the conveyance was fraudulent amounted to a finding that his statement relative to consideration was false. What we have said above as to the actual issue presented to the jury applies equally here. We cannot find that the jury's finding was tantamount to a finding that the asserted consideration was not paid, and if not, that the assertion itself was knowingly false.

There is no merit in appellee's contention that no adequate petition for review was filed. The facts are that the petition for review was filed in the district court rather than with the referee. At the time of filing there was no referee in office. Appellee cites no authority to support his contention that such filing is void for want of jurisdiction. We know of no such rule.

It appearing that the referee based his order exclusively on his understanding that he was bound, as a matter of law, by the judgment in the civil action, and, this being an incorrect conclusion, the judgment of the district court affirming his order and the order denying appellant's discharge are reversed and the matter is remanded for further and not inconsistent proceedings.

Reversed and remanded.