Clinton Loran SHELBY, Bankrupt, Appellant,

v.

TEXAS IMPROVEMENT LOAN COMPANY and Home Improvement Loan Company, Appellees.

No. 18140.

United States Court of Appeals Fifth Circuit.

June 30, 1960.

James L. McNees, Jr., Dallas, Tex., for appellant.

William J. Rochelle, Jr., Dallas, Tex., for appellee.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellant, Clinton Loran Shelby, was adjudicated a bankrupt on a voluntary petition. He applied for a discharge. The appellees, Texas Improvement Loan Company and Home Improvement Loan Company, objected to the discharge. The Referee in Bankruptcy sustained the objection and denied the discharge. On a petition for review, the District Court sustained the Referee. Shelby has appealed.

The bankrupt Shelby and Lester L. Day each owned 250 shares of the common stock of Masonry Construction Company, a Texas corporation, of the par value of $10 per share, this being all of the common stock of the company. Masonry Construction Company, as its name suggests, was in the business of doing brick, block and stone construction work, generally as a subcontractor. It was incorporated in 1953 or 1954. During 1954 and 1955 it did a gross business of around $200,000 annually. It expanded its operations and did business in Oklahoma, New Mexico, Arizona, and Colorado, as well as in Texas. In 1956 its contracts showed an operation scheduled to gross a million dollars. Early in 1956, Masonry Construction Company needed funds. An application for financing was made to the appellee corporations and negotiations on their part were conducted primarily by Roy C. Coffee, president of both corporations. As a result of these negotiations the appellees paid $30,000 into the treasury of Masonry Construction Company. Preferred stock of Masonry Construction Company of the par value of $30,000, which had not before been outstanding, was then issued and certificates therefor were delivered to the appellees. An agreement was entered into of the following tenor:

"The State of Texas County of Dallas } Know All Men By These Presents:

"I.

"That Home Improvement Loan Company, a corporation does hereby purchase from the Masonry Construction Company, a corporation, three hundred (300) shares of the preferred capital stock. One Hundred Dollars ($100.00) par value, of Masonry Construction Company for and in consideration of the sum of Thirty Thousand Dollars ($30,000.00).

"II.

"In consideration of the purchase of said stock for Thirty Thousand Dollars ($30,000.00), the Masonry Construction Company, C. L. Shelby and Lester L. Day do hereby agree that on July 15, 1956, they will purchase, or cause to be purchased, said three hundred (300) shares of the preferred capital stock of Masonry Construction Company for at least Thirty-Four Thousand Dollars ($34,000.00), and in addition to the assets of the Masonry Construction Company we, as officers, officials and individuals of said Company, do hereby pledge our personal and individual liability and assets, a statement of which is submitted and attached hereto, to guarantee the performance of said agreement to so purchase the above stock on said date.

"We further agree that we will provide and furnish to Home Improvement Loan Company a term insurance policy so that in the event of the death of either one of us pending the time of the agreement, sufficient insurance shall be provided to cover the amount necessary to perform this agreement and guaranty, which we hereby make to said Home Improvement Loan Company.

"Witness our hands at Dallas, Texas, this 10th day of January, 1956."

The agreement was executed for Masonry Construction Company by Shelby as its president and Day as its secretary. Shelby and Day, individually, signed the agreement. Home Improvement Loan Company executed with Coffee signing as its president. The agreement was prepared by an attorney representing the appellees. This attorney shared office space with Coffee, who was also an attorney.

Annexed to the instrument was a copy of the minutes of a meeting of the directors of Masonry Construction Company reciting the adoption of a resolution authorizing the sale of the stock for $30,000 and agreeing to repurchase it for $34,000. Also annexed to the instrument were financial statements of Masonry Construction Company and of each of its common stockholders, Shelby and Day. The statement of the company, on the asset side, showed Current Estimates of $77,286.57, and Retainages Earned in the amount of $37,966.84. Its capital, surplus and profit figures on the statement showed a total of $60,511.92, which reflected, or should have reflected, the book value of the stockholders' equity. Shelby's balance sheet showed a net worth of $30,900 of which $25,000 was represented by his Masonry Construction Company stock. The company became unable to continue its operations and it ceased doing business during 1956. It was unable to pay $34,000 to the appellees on July 15, 1956. On the following day $4,000 was paid and it was then agreed that the stock could be obtained from the appellees on September 15, 1956, for $30,600. A written contract to evidence this agreement was executed. No further payments were made.

On January 16, 1958, the appellant was adjudicated a bankrupt on a voluntary petition. The appellee corporations filed objections to granting a discharge in bankruptcy to the appellant, specifying the ground for their objection in these words:

"That the bankrupt has obtained money or property on credit by making or publishing or causing to be made or published a materially false statement in writing respecting his financial condition. More particularly, on or about January 10, 1956, the bankrupt as an inducement for

Texas Improvement Loan Company and Home Improvement Loan Company to purchase 300 shares of preferred stock of Masonry Construction Company, agreed with said companies to repurchase said stock on July 15, 1956, for the sum of $34,000. As a further inducement to said companies, the bankrupt delivered to said companies his financial statement dated June 30, 1955, which statement showed the bankrupt's net worth to be $30,900, based on, among other things, 'stocks' set out at a value of $25,000, said stocks being stock owned by the bankrupt in Masonry Construction Company. Said stock in the Masonry Construction Company, instead of being of a value of $25,000, was actually worthless, said company being insolvent. But for the reliance of Texas Improvement Loan Company and Home Improvement Loan Company on said financial statement and on said repurchase agreement, said $30,000 would not have been advanced."

Before the Referee the appellees introduced in evidence a copy of the 1955 income tax return of Masonry Construction Company to which were attached balance sheets as of December 31, 1954, and December 31, 1955, and a statement of income and deductions for the calendar year 1955. The balance sheets for 1954 and 1955 showed a deficit of earned surplus of $3,738.42 for 1954 and of $23,933.52 for 1955. The Referee concluded that the statements filed with the tax returns furnished reasonable grounds for believing that the statement of the company's affairs submitted to the appellees was false, and so cast upon the bankrupt the burden of showing the accuracy of the statement supplied to the appellees. This the appellant attempted to do.

The appellant's lack of knowledge of accounting methods was not only demonstrated in his testimony but was frankly admitted. However, the claim was asserted that the statement furnished to the appellees was on an accrual basis and the statements annexed to the tax returns were on a cash basis. As supporting this contention it may be pointed out that in the 1955 statement there is an item scheduled as Advances Received on Incomplete work in the amount of $346,142.76. If those for whom Masonry Construction Company was doing work under contracts were withholding the customary 10% of progress payments made before the jobs were completed and accepted, there would have here been an item of $34,614.27 which would properly have been shown on an accrual balance sheet as Retainages Earned in this amount. On the company's balance sheet for 1955, there is a Retainages Earned item of $37,966.84. The difference between the two figures is less than ten per cent. The estimated amounts earned on work done on which no payment was made was shown on the balance sheet submitted to the appellees as Current Estimates and the amount was shown as being $77,286.57. Whether good accounting practice requires or permits such an item to be listed on a balance sheet as an asset is something we do not know and do not need to know, but it was so listed, and as an estimate and nothing more. Both Shelby and Day testified as to the rapid crumbling of their venture and assigned the various reasons of lack of capital, excessive overhead, losses from underbidding and other causes. The bondsmen of Masonry Construction Company were required to complete its contracts and, according to the testimony of Shelby and Day, the profits hoped for were transformed into rapidly mounting losses.

The Referee held that the explanation offered by the appellant fell short of the burden of the appellant to prove the accuracy of the statement to the appellees. The Referee thus stated his view in cryptic phrase, "This business either had a net worth or it was broke, it could not be both." This, we think, is an oversimplification of the question, as is the opinion of the district court in affirming the referee's order denying the discharge where the court said, "It is our opinion

also that the bankrupt has not brought himself within the bounds of equity in seeking his discharge."

In disposing of the contention made by Shelby that the agreement of Masonry Construction, Day and Shelby, with Home Improvement Loan Company was a sale and repurchase contract rather than evidence of a secured loan, the Referee invoked the rule that a court of equity will look beyond the terms of the instrument to the real transaction. The Referee, so looking, found that the transaction was one of security and not of sale, and that credit was extended to Masonry Construction in reliance upon Shelby's financial statement. The instrument itself is, in form, one for the sale and repurchase of stock. The President of the two objecting creditor corporations, Roy C. Coffee, was the negotiator for them of the deal with Masonry Construction. He testified that Day and Shelby "made a proposal that they sell preferred stock to us temporarily * * * and that they would repurchase it." He was asked if the transaction was a loan and replied, "No, that was a purchase of the stock with their guaranteed repurchase by them and by Shelby and Day individually." It would seem questionable that there is any such ambiguity as to the general purport of the agreement as would require or permit parol evidence to determine its meaning. However, the parol evidence was received and discloses that the instrument as drawn expressed the purpose and intention of the parties to it. Cf. 13 Tex.Jur. 287, 294, 300, Contracts §§ 122, 125, 128. We do not think the record and the evidence shown by it sustain the Referee's determination that credit was extended by the appellees and security given by Shelby.

In a motion for rehearing filed with the Referee the appellant raised the point

that, considered as a security agreement the terms of the contract were usurious and that the discharge should not be denied because the appellees were not before the court with clean hands. The Referee and the court rejected this contention on the ground that the Texas statute,[1] which makes the provision for usurious interest void, permits the principal to be recovered, and the objection of the appellees should not, for this reason, be dismissed.

■■ A contract for the payment of $34,000.00 in a few days over six months for a loan of $30,000.00 would be usurious and, to the extent of the interest of $4,000.00, would be void. Vernon's Rev. Tex.Civ.Stat.Ann. Art. 5071. If the contract evidenced a loan, the usury was compounded when the objecting corporations, on July 16, 1956, received from Masonry Construction, Day and Shelby, the sum of $4,000.00 and their written undertaking to pay $30,600.00 on September 15, 1956. A wrongful intention or result should not be imported into a contract by construction which neither its language nor the intent of the parties as disclosed by testimony requires. 17 C.J.S. Contracts § 318, p. 735. W.C. Shepherd Co. v. Royal Indemnity Co., 5 Cir., 1951, 192 F.2d 710. It has been suggested that the parties agreed upon a sale of preferred stock, with a purchase or repurchase agreement, in order to make a transaction that would be outside of the operation of the usury statute. If such was intended and as a consequence Shelby has become entitled to a discharge, we cannot say that an injustice to the appellee objectors has resulted. We think it cannot be said that money or property was obtained on credit by or at the instance of the bankrupt.

■ There is another reason why, in our opinion, the order denying Shelby his

---

1. "The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; and all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater rate of interest shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered." Vernon's Rev.Tex.Civ. Stat.Ann. Art. 5071.

discharge must be reversed. There are differences between the accrual basis and the cash basis of keeping accounts and preparing balance sheets. These differences have been thus stated:

"In bookkeeping, the term [accrual basis] is used to describe a method of keeping accounts wherein entries are made of credits and debits as the liability arises, whether then received or disbursed, and which implies that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned, rather than on the basis of actual receipts and disbursements; and is employed in contradistinction to 'cash basis,' 'receipt basis,' and 'receipts and disbursements basis.'" 1 C.J.S., Acknowledgments p. 758.

The accrual method and the cash receipts and disbursements method are both recognized in the Internal Revenue Code. 26 U.S.C.A. (I.R.C.1954) § 446. The attempted reconciliation of the two statements ought not be brushed aside by saying that the business either had a net worth or it was broke. It might have had, as was claimed, current estimates and retainages earned which were included as assets in a statement prepared on an accrual basis. Such assets would not, it seems, be properly included in a statement prepared on a cash basis, but the omission of such items from a cash basis statement does not of itself demonstrate, as the Referee decided, that such assets did not exist nor that the stock of Shelby was without value.

Value is a term of many meanings. In looking to the value of Shelby's stock in Masonry Construction to determine whether he made a materially false statement as to its value, we are not to consider the par value. Nor is the value necessarily the book value, although this seems to be the sole test of the Referee and the district court. Market value would be pertinent if a market existed, but here the corporation had but two stockholders and no stock had been bought or sold in an open market. In de-termining the value of a close corporation a balance sheet, on whatever basis prepared, is unlikely to furnish a true measure of the value of the corporation's issued stock, except perhaps in the case of an investment company owning securities of a readily ascertainable market value. This view has been expressed by the Second Circuit in these words:

"Everyone knows that the value of shares in a commercial or manufacturing company depends chiefly on what they will earn, on which balance sheets throw little light." Borg v. International Silver Co., 2 Cir., 1925, 11 F.2d 147, 152.

The cash basis balance sheet, relied upon by the Referee, which was annexed to the 1955 Income Tax Return, showed "Cost Jobs Not Completed, $342,215.56" and "Advances Received on Incomplete Work $346,142.76." These figures, to a considerable degree, corroborate the otherwise undisputed testimony of Shelby and Day as to the volume of work in progress at the time Shelby's statement of his financial worth was given to the companies. A difference between figures appearing in an income tax return and those furnished as a basis for credit does not of itself establish the falsity of the latter. International Shoe Co. v. Lewine, 5 Cir., 1934, 68 F.2d 517.

We see no reason for doubting Shelby's declarations as to his confidence, at the time the statement was given, in the continuing increase of the business of Masonry Construction. We do not see any basis for questioning the sincerity of his professed belief that the operations of the corporation would be profitable. Hindsight may supply the basis for the inference that Shelby was overoptimistic, and that this overoptimism was the result of bad judgment. There is nothing that calls for a finding that his confidence was feigned or that his representations were made in bad faith. Applicable here is the holding of this Court that,

"For a statement of financial condition to be false it must be not only incorrect but made or acquiesced in

either with knowledge of its incorrectness or with reckless indifference to the actual facts and with no reasonable ground to believe it correct." International Shoe Co. v. Lewine, supra [68 F.2d 519]; Hartsfield Co. v. Smith, 5 Cir., 1932, 61 F.2d 723; Franklin v. Monning Dry Goods Co., 5 Cir., 1914, 217 F. 929.

We think the Referee and the District Court misconceived and misapplied the rule of the cases just cited. To us it seems clear that the opinion of Shelby as to the value of his stock as set forth in his financial statement was based upon a reasonable ground and that he believed it to be correct.

The objecting companies urge that discharges in bankruptcy should be denied to those who do not deserve them and there can be no disagreement with this statement. On the other hand, as this Court has before said, "We are disposed to deny that in the present bankruptcy law the discharge of the honest debtor is a mere incident which could have been omitted without impairing its symmetry and efficiency; and, on the contrary, to assert that the release of the honest, unfortunate, and insolvent debtor from the burden of his debts and restore him to business activity, in the interest of his family and the general public, is one of the main, if not the most important, objects of the law." Hardie v. Swafford Bros. Dry Goods Co., 5 Cir., 1908, 165 F. 588, 591, 20 L.R.A.,N.S., 785. See Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230; Hayslip v. Long, 5 Cir., 1955, 227 F.2d 550; Franklin v. Monning Dry Goods Co., supra; In re Pinkston, D.C.N.D.Tex.1950, 93 F.Supp. 942.

A bankrupt is not to be denied a discharge on general equitable considerations. It can only be denied if one or more of the statutory grounds of objection are proved. 1 Collier, Bankruptcy 1254, Par. 14.02(1); Dixon v. Lowe, 10 Cir., 1949, 177 F.2d 807; In re Pinkston, supra. The required proof has not been made in this case.

Having concluded that error was committed in denying Shelby his discharge in bankrupcy, the judgment of the district court is reversed and the cause is remanded to permit the entry of an order of discharge.

Reversed and remanded.