David F. RICE, Bankrupt, Appellant,

v.

Mack MATTHEWS, Trustee, Appellee.

No. 21535.

United States Court of Appeals
Fifth Circuit.

March 11, 1965.

———◆———

Samuel J. Zusmann, Jr., and Lipshutz, Macey, Zusmann & Sikes, Atlanta, Ga., for appellant.

Robert F. Lyle, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and MOORE * and BELL, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from the denial by the trial court of a discharge of appellant in bankruptcy. In order that the seriousness of the matter can be appreciated, it should be noted that provable debts in the bankruptcy amounted to some half million dollars, whereas the referee's order denying the discharge was based upon a finding that appellant had transferred and concealed property having a value of not to exceed $4300 from his creditors with the purpose of hindering, delaying and defrauding creditors.

The basic facts are not in dispute. Prior to the date of the bankruptcy, June 28, 1961, Rice was engaged in the purchase and sale of real estate. He was also a partner with his son in Rice & Company, whose business was the construction of buildings and apartments. In October, 1960, Rice, as an individual, signed a contract to purchase certain property on McLendon Avenue. This contract recited a sales price of $17,600, and provided that the sale was to be closed on or before January 1, 1961. Rice expected funds from the sale of property in which he had an interest to permit him to close the deal by January 1st. This sale had not materialized and, therefore, he did not have the cash to consummate the transaction and so reported to the agent of the seller.

Nothing further was done until March, 1961, at which time the agent informed Rice that he could "still buy" the property for the same price. Rice still was without funds and could not pay for the property then. Nevertheless, be discussed it with one Davis, with whom he had previously had successful business dealings, and which had proved sufficiently profitable to Davis so that, as the latter testified on the trial involved here, he offered to buy the property in his own name as an outright acquisition, agreeing that he would hold it for a short but indefinite period, and if it could be sold for a profit he would give this profit to Rice. If it was sold at a loss Davis would absorb the loss. Davis made his independent investigation of the property and was satisfied that he was not taking much risk. He thereupon acquired the property on March 16, 1961, having title placed in the name of two corporations that were wholly owned by him.

Approximately a month later a real estate agent notified Rice that he had a prospective purchaser for the property at a gross profit of some $5900. Rice referred the agent to Davis and, although there is no finding of fact touching on this by the referee, Rice doubtless advised Davis that it was a good sale. Thereupon, Davis agreed to a sale of the property and a contract was executed on April 26, 1961. Rice was away from town on the closing date set for May 10. Davis was concerned about the mechanics of transferring the property as he did not want to show any taxable profits which he did not expect to retain for himself. Davis' lawyer suggested transferring the property to Rice's daughter-in-law at cost to Davis, plus interest on the money to May 10. This was done and the daughter-in-law then transferred the property to the purchaser, received a check for the purchase price, reimbursed Davis for his cost and, after deducting the closing cost and paying a legal fee of $1000 to Rice's attorney, the remaining proceeds were paid to Rice's wife and were deposited in a joint bank account of the bankrupt and his wife.

The amount actually enjoyed by Rice and his wife, after the deduction of his attorney's fee, amounted to approximately $3300. This amount had been substantially used up by living expenses of Rice and his wife prior to his filing his voluntary petition for arrangement proceedings on June 28. No contention is made that any of the proceeds of the sale were themselves dissipated improperly or secreted or otherwise concealed.

* Of the Second Circuit, sitting by designation.

This entire transaction was testified to during the hearings held in conjunction with the meetings of creditors so that the entire information was available to the bankruptcy court.

Rice and Company, the partnership of appellant and his son, had previously filed arrangement proceedings on April 28, 1961. There was no evidence that would warrant a holding that, whatever interest Rice individually may have had in the contract to purchase the McLendon Avenue property, this property was ever an asset of the partnership.

■ In dealing with this factual situation, we must bear in mind that "the discharge provision of the Bankruptcy Act is a salutary remedial provision intended to permit insolvent debtors to be relieved from their burden of obligations if they conform to the other requirements of the law". Hayslip v. Long, 5 Cir., 227 F.2d 550. As far back as the year 1908, this Court stated:

> "The release of the honest, unfortunate, and insolvent debtor from the burden of his debts and restore him to business activity, in the interest of his family and the general public, is one of the main, if not the most important objects of the [bankruptcy] law." Hardie v. Swofford Bros. Drygoods Co., 165 F. 588, 591, 20 L.R.A.,N.S. 785, 5 Cir.

This case was cited with approval by us in Shelby v. Texas Improvement Loan Co., 5 Cir., 280 F.2d 349.

■ Moreover, we should bear in mind that the burden is on the person seeking to deny a discharge to adduce the proof establishing that one of the grounds for denial in Section 14, sub. c(4) of the Bankruptcy Act has been established, and that, "the proof required is not satisfied merely by a showing of fraudulent conveyance unless the fraud infecting such conveyance includes the specific intent to defraud creditors". Hayslip v. Long, supra, 227 F.2d 553.

In this case the referee found that as of May 10, when Mr. Davis, who all parties agree was without blame or criticism in the matter, transferred title to the McLendon property to appellant's daughter-in-law, his was, in effect, a transfer by appellant of a property right which he had in the contract to buy the McLendon Avenue property, and having been made in a manner that placed legal title in his daughter-in-law for a brief period of time before the proceeds were transmitted to his joint account with his wife, this was sufficient evidence of a fraudulent transfer and fraudulent concealment for the purpose of hindering, delaying and defrauding creditors.

Appellant takes the position first that he had no property or interest in the McLendon Avenue property after January 1, the date on which the contract to purchase was to have been closed; second, he says that if he had any interest he surrendered his interest to Mr. Davis, who took full legal title and was under no legal obligations to hold it further for the benefit of appellant and that when Mr. Davis did actually sell it for a profit he voluntarily surrendered the profit to appellant; that in any event the full value of the property interest that appellant had, if any, was immediately placed in his bank account and thus there could be no transfer or concealment with any intent to defraud creditors.

■ It is evident from a reading of the record that the referee was unfavorably impressed by the fact that the appellant, during the hearing below, changed his testimony as to two matters, one of which was not relevant to the inquiry before the referee at the moment, and the other with respect to knowledge he had with reference to value of the McLendon Avenue property at the time that he suggested to Mr. Davis that he take title to it. However, the court found, as we think the record fully warranted, that this change in testimony was not sufficient to sustain the charge

of giving of false testimony as a separate ground for denial of discharge.

 The referee also appeared to be concerned about the failure of Rice to include any reference to the "property interest" which he may have had in the contract touching on the McLendon property in the partnership schedule. However, the referee did not deny discharge to the partners by reason of the partnership proceedings, and no specific finding was made, nor could it be on the record here, that this particular property interest was a part of the partnership assets. As we have noted, proof sufficient to sustain a denial of discharge must be specific and directed to the subject of the transfer or concealment involved. "A bankrupt is not to be denied a discharge on general equitable considerations. It can only be denied if one or more of the statutory grounds of objection are proved." Shelby v. Texas Improvement Loan Co., supra, 280 F.2d p. 355.

Here it is quite questionable whether Rice had had any property in the bankruptcy sense which could be transferred to Davis. It is certain that Davis could at that time have bought the property for himself and held it for disposition at the profit that was ultimately made without any obligation to Rice. The fact that he took it and gambled on an increase in value, which paid off to the extent of a net profit of $3300, all of which was put into Rice's personal bank account and was thus available for creditors, makes clear to us that a determination by the referee and the trial court that this transaction amounted to a transfer or concealment of assets belonging to Davis was clearly erroneous.

The judgment of the trial court must, therefore, be reversed and the case remanded for the entry of an order granting the discharge.