**In re Marshall Gaither SMITH, Bankrupt.**

**MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Marshall Gaither SMITH, Defendant.**

No. 74–055.

United States District Court, M. D. Louisiana.

Dec. 21, 1976.

Charles S. McCowan, Jr., John Dale Powers, Sanders, Miller, Downing & Kean, Baton Rouge, La., for Mount Vernon Fire Ins. Co.

Gerard E. Kiefer, Forrest, Kiefer & Bacot, Baton Rouge, La., for Marshall Gaither Smith.

E. GORDON WEST, District Judge:

This case is before the Court on plaintiff's application for review of an order of the Bankruptcy Judge whereby he discharged a $132,970.40 debt owed to plaintiff. The bankrupt, Marshall Gaither Smith, was engaged as an agent or broker in the insurance business. He sought and received a brokerage contract with the plaintiff insurance company. In connection with this contract the bankrupt represented himself as being president and principal owner of the Louisiana Brokers Exchange of Baton Rouge, and as "principal owner" he executed a personal guaranty covering any unremitted premiums that might occur

during the term of the contract. The $132,-920.40 represents a judgment for unremitted premiums obtained by plaintiff in a State Court suit against the Louisiana Brokers Exchange of Baton Rouge and the bankrupt, Marshall Gaither Smith, jointly and in solido. The bankrupt, Marshall Gaither Smith, listed this judgment as a debt on his petition for bankruptcy, and it was included among the debts discharged by the Bankruptcy Judge.

Plaintiff seeks to have that debt removed from those discharged on the ground that the bankrupt falsely represented his status with the Louisiana Brokers Exchange of Baton Rouge, and also furnished the plaintiff with what it contends are false financial statements. After extended hearings, the Bankruptcy Judge concluded that the plaintiff had failed to produce facts which would constitute grounds for the denial of a discharge of the debt in question. After a careful review of this record, we cannot say that the conclusions of the Bankruptcy Judge were clearly erroneous and we therefore affirm his judgment.

The facts giving rise to this litigation are briefly as follows. In April or May of 1972, the bankrupt came to plaintiff's office in King of Prussia, Pennsylvania, seeking to enter into negotiations for an insurance brokerage contract. There he met with plaintiff's representatives. There is some dispute as to exactly how the bankrupt represented himself at this meeting, but it was the recollection of the plaintiff's witnesses that the bankrupt claimed to be president and principal owner of Louisiana Brokers Exchange of Baton Rouge. It was their testimony that the bankrupt made repeated references to his "Louisiana operation." In the course of these negotiations the bankrupt presented certain financial statements to plaintiff's representatives. These statements, which were introduced at the hearing on plaintiff's objections to discharge, purported to show the financial condition of the three companies purportedly making up the bankrupt's "Louisiana operation."

After concluding these initial negotiations, plaintiff's representatives indicated some interest in entering into a brokerage agreement with Louisiana Brokers Exchange. Toward this end the bankrupt was asked to return in a couple of weeks. At the end of this time, the bankrupt did return and was told that before any contract could be consummated, he would have to sign a personal guaranty assuming any contractual debt incurred by Louisiana Brokers Exchange. The bankrupt agreed, and the brokerage agreement and the personal suretyship contract were prepared by the plaintiff. The bankrupt signed the personal guaranty as principal owner of Louisiana Brokers Exchange on June 8, 1972. He also signed the brokerage contract as president of Louisiana Brokers Exchange on the same date.

Pursuant to the contract, Louisiana Brokers Exchange was granted a sixty (60) day extension of unlimited credit. The company then began to underwrite insurance policies according to the terms of the contract. On August 25, 1972, the bankrupt called the plaintiff's office in King of Prussia and warned plaintiff's representatives that he had become suspicious of his partners' activities. He advised plaintiff to take whatever action they felt necessary to protect their interests. Acting on this warning, plaintiff sent its general counsel to Baton Rouge to investigate. Upon ascertaining that the bankrupt's warning was well founded, plaintiff's counsel removed all policies and supplies which had been furnished to Louisiana Brokers Exchange. Notice was then sent terminating the brokerage agreement.

When it became evident that Louisiana Brokers Exchange would be unable to remit the premiums owed under the agreement due to that company's insolvency, plaintiff filed suit against the bankrupt in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. The basis of this suit was the personal guaranty which the bankrupt had signed on June 8, 1972. After trial, judgment was rendered against the bankrupt on October 31, 1973.

On February 25, 1974, the bankrupt filed a voluntary petition for bankruptcy and the plaintiff's debt was duly listed in the schedule of claims. Plaintiff timely filed its objections to the discharge in bankruptcy, and after hearing they were denied by the Bankruptcy Judge on June 30, 1976. This appeal followed.

Plaintiff objected to the bankrupt's general discharge under § 14(c)(3) of the Bankruptcy Act, Title 11, U.S.C. § 32(c)(3). This section provides in pertinent part:

"The court shall grant the discharge unless satisfied that the bankrupt has . . . (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation."

To deny a discharge under the provisions of this statute, it has been held that there must be a written statement which is both materially false in fact and is also ". . . made and acquiesced in either with actual knowledge that it was incorrect or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct." *Morimura, Arai & Co. v. Taback,* 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929); *O'Rieley v. Endicott-Johnson Corp.,* 297 F.2d 1 (C.A. 8 — 1961). In this case, it is the written financial statements that the bankrupt gave plaintiff's representatives on his first visit to King of Prussia which are alleged to be false.

Hearing was held on this objection on June 18, 1974. At the close of plaintiff's evidence the bankrupt's counsel moved for an involuntary dismissal under Bankruptcy Rule 741. The basis for this motion was that the plaintiff had failed to prove that the financial statements presented in King of Prussia were in fact incorrect. A contin-

uance was granted to consider the motion and on June 23, 1974 the Bankruptcy Judge declined any ruling on the motion until all the evidence had been presented in the case. At the close of all the evidence, the Bankruptcy Judge reserved judgment until a later date, and on June 30, 1976, ordered that this objection to the bankrupt's discharge be dismissed. His reasons for judgment note that the plaintiff failed to sustain the burden of proof required by Bankruptcy Rule 407. It was his opinion that plaintiff had ". . . failed to produce evidence establishing that a materially false financial statement had been made (and if so, in what particulars)." We agree.

■ We have reviewed the entire record on the plaintiff's objections. On June 18, 1974, the financial statements here in question were introduced into evidence. The only reference to the truth or falsity of these documents were when plaintiff's secretary and general counsel made the statement that the financial reports contained "gross inaccuracies" and when the bankrupt commented that if Gene McFerrin, his partner in this insurance enterprise, had anything to do with the reports' preparation then they were "probably false." There is no other reference in the record concerning whether these documents are in fact false or, if false, in what respect. No particular inaccuracies are referred to by the witnesses for either party.

Rule 407 of the General Rules of Bankruptcy provides that:

"At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection." See also *Minnick v. Lafayette Loan & Trust Co.,* 392 F.2d 973 (C.A. 7 — 1968), *Rice v. Matthews,* 342 F.2d 301 (C.A. 5 — 1965), *Moffett v. Union Bank,* 378 F.2d 10 (C.A. 9 — 1967).

It is essential to plaintiff's objection under § 14(c)(3) of the Bankruptcy Act that it be proved that the bankrupt made or published or caused to be made or published ". . . a materially false statement in writing." The Referee determined that the plaintiff failed to carry the burden placed upon him

by Rule 407. After reading the record in this case, the Court agrees with this determination. However, even if this Court were to disagree with the Bankruptcy Judge's decision in this case, that standing alone would not justify a reversal. It is well established that in reviewing bankruptcy appeals ". . . that the Referee's findings of fact are to be accepted unless clearly erroneous." *Solari Furs v. United States,* 436 F.2d 683 (C.A. 8 — 1971); *Monroe v. Cussen,* 454 F.2d 1151 (C.A. 9 — 1972); *Mazer v. United States,* 298 F.2d 579 (C.A. 7 — 1962); *In re Sewell,* 361 F.Supp. 516 (S.D.Ga.1973); *In re Hippler,* 278 F.Supp. 753 (W.D.La.1973). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947); *McDowell v. John Deere Industrial Equipment Co.,* 461 F.2d 48 (C.A. 6 — 1972); *In re Kirk Kabinets, Inc.,* 393 F.Supp. 789 (M.D.Ga. — 1975). On the basis of the record before us, we have no qualms in saying that the Bankruptcy Judge's decision was not "clearly erroneous."

The plaintiff also objected to the discharge of the particular debt involved in this case under the provisions of § 17(a)(2) of the Bankruptcy Act, Title 11, U.S.C. § 35(a)(2). This statute states:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published in any manner with intent to deceive . . ."

As we have already passed upon the truth or falsity of the financial statements involved in this case, we confine this portion of our opinion to the bankrupt's alleged "false pretenses or false representations."

To deny a discharge under the provisions of this statute it is necessary that the objecting creditor prove:

". . . that the bankrupt knowingly made false representations, that such representations were made with the intent of defrauding the creditor or were made with such reckless disregard for the truth as to be tantamount to a willful misrepresentation, and that the creditor relied upon and was misled by the false pretense or representation." *United States v. Syros,* 254 F.Supp. 195 (E.D.Mo.1966); *X–L Finance Co. v. LeDoux,* 215 So.2d 164 (La.App.1968); *Earl Staehle Finance, Inc. v. Brooks,* 144 So.2d 155 (La.App. 1962).

The Referee's June 30, 1976 order makes it clear that although, in his opinion, there was reliance on the misrepresentations of the bankrupt, the reliance was so unreasonable as to be no reliance at all. We cannot say that this conclusion was clearly erroneous.

Plaintiff argues in his brief that the ruling places upon the objecting creditor the duty to investigate the bankrupt's assertions. It is contended that mere reliance upon the misrepresentations is the test to apply in determining the dischargeability of the bankrupt's debt, whether or not the objecting creditor undertook an independent investigation. Plaintiff cites several cases to support his contention that only in those cases where there has been a previous financial relationship between the parties is a duty to investigate imposed. We note that the cases cited by plaintiff are concerned not with § 17(a)(2) of the Act with which we are presently concerned, but with objections raised under § 14(c)(3) of the Act. As the Bankruptcy Judge's ruling denying the plaintiff's objection under § 14(c)(3) of the Act was not based upon lack of investigation as plaintiff's brief appears to argue, but instead upon the failure to prove the falsity of the financial statements, we did not consider them in making

our ruling under that section. We will, however, consider them here.

We do not read these cases as narrowly as plaintiff would have us read them. In *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (C.A. 9 — 1971), the Court found that there had been a false financial statement and that there was no investigation by the creditor. However, the Court's decision was not based upon the lack of the creditor's investigation, but upon the effect that lack of investigation had upon the creditor's reliance in light of the previous financial dealings between the parties. It was stated by the Court:

". . . we agree with the district court that whatever reliance Kentile (the creditor) placed upon these statements was not a reasonable reliance, that Kentile therefore had no right to rely upon the statements in this situation." *Kentile Floors, Inc. v. Winham,* supra.

The other cases cited by the plaintiff are to the same effect. The Court in each case based its decision upon the reasonableness of the creditor's reliance, and not upon whether or not an investigation was undertaken.

In the case of *In re Arden,* 2 Bankr.Ct. Dec. 204 (D.R.I. — 1975), which is cited by the Bankruptcy Judge in making his ruling, there was presented a question concerning the nature of the creditor's reliance upon the bankrupt's representations where there has been an objection to discharge under § 17(a)(2) of the Bankruptcy Act. The Court there held:

"Sec. 17(a)(2) of the Bankruptcy Act specifically states that extensions or renewals of credit must be made 'in reliance upon' false statements. Assuming for the purpose of this discussion only, that all of the other elements of fraud have been shown by clear and convincing evidence, American (the creditor) has not established reliance on its part.

"Though the word 'reasonable' does not appear in Sec. 17(a)(2) in connection with reliance, it cannot be disputed that reliance must of necessity be reasonable. The element of reasonableness is implicit

in the proposition that '(W)hile the Act . . . attempts to strike a balance between the disparate interests involved . . . it must be remembered that the Act ultimately favors the debtor who invokes its protection.' *In Re Schmelzer,* 350 F.Supp. 429 (1972), aff'd 480 F.2d 1074 (6th Cir. 1973). See also *Lines v. Frederick,* 400 U.S. 18 [91 S.Ct. 113, 27 L.Ed.2d 124] (1970); *Perez v. Campbell,* 402 U.S. 637 [91 S.Ct. 1704, 29 L.Ed.2d 233] (1971). It would clearly work against the conscience of this Court to allow recovery by money lenders in cases where their claims are clearly based upon unreasonable reliance."

We are in agreement with the Court's analysis in the *Arden* case. As in that case we are here concerned with an arm's length financial transaction. The plaintiff's witnesses testified that the bankrupt was a total stranger before his first encounter with plaintiff in 1972. The financial statements which plaintiff argues are false bear no signature or any markings to identify them other than the heading. They appear to this Court to be nothing more than typewritten statements on the stationery of the companies whose financial status they purport to represent. Even ignoring the plaintiff's failure to investigate the bankrupt's assertions when it had an ample opportunity to do so, we find it inconceivable that any business institution would extend unlimited credit to a total stranger on the strength of these documents.

We do not condone the bankrupt's conduct in this affair. The evidence at the hearing raised serious questions as to the propriety of his actions. It was shown that the bankrupt either represented or lead the plaintiff to believe that he was the president and principal owner of Louisiana Brokers Exchange. He did in fact sign the brokerage agreement and personal surety contract in those capacities. However, we do note that these documents were prepared for the bankrupt's signature by the plaintiff's representatives. Further, the bankrupt testified concerning the tangled

set of affairs between Louisiana Brokers Exchange and International Underwriters, Inc., another firm in the "Louisiana operation." It was the bankrupt's explanation that while he was not president and principal owner of Louisiana Brokers Exchange, he was vice president and a stockholder of 20 per cent of the shares in International Underwriters. This, coupled with the fact that Louisiana Brokers Exchange is wholly owned by International Underwriters, is what the bankrupt asserts led to the confusion as to his representative capacity.

We have considered all of the above in light of whether or not the plaintiff presented a sufficient case to transfer the burden of proof under § 14(c) of the Bankruptcy Act, Title 11, U.S.C. § 32(c). To charge the bankrupt with the burden of proving his innocence, it is necessary that plaintiff first present a prima facie case that the act which would deny the bankrupt his discharge has occurred. *In Re KDI Corp.,* 477 F.2d 742 (C.A. 6 — 1973); *Connelly v. Michael,* 424 F.2d 387 (C.A. 5 — 1970); *Rice v. Matthews,* supra. Whether this burden was or was not met by the plaintiff need not be determined by this Court. The Bankruptcy Judge concluded that plaintiff failed to carry its burden of proof. We do not find that his decision was "clearly erroneous."

Therefore, for these reasons, the June 30, 1976 order of the Bankruptcy Judge overruling the objections to the bankrupt's discharge is AFFIRMED, and judgment will be entered accordingly.