**In the Matter of Seymour VOGEL, Debtor.**

**The CHASE MANHATTAN BANK, Plaintiff,**

v.

**Seymour VOGEL, Defendant.**

**Bankruptcy Nos. 80–01644–BKC–SMW, 81–00060–BKC–SMW.**
**Adv. No. 81–0183–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

Sept. 1, 1981.

Irving Wolff, Miami, Fla., for debtor.

Williams, Salomon, Kanner, Damian, Weissler & Brooks, Miami, Fla., for plaintiff.

Reggie Sanger, Fort Lauderdale, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon an Adversary Complaint filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusion of law:

The adversary proceedings were commenced with the filing of a five-count complaint, seeking denial of the granting of discharge to the Debtor pursuant to Section 727(a)(2), (3), (4) and (5), and to determine the non-dischargeability of a debt pursuant to Section 523(a)(2). (Bankruptcy Reform Act of 1978, hereinafter referred to as the Bankruptcy Code).

During the trial of the cause, the Court took judicial notice of the entire record of these Chapter 7 proceedings, including but not limited to the Statement of Affairs and the Schedules of Assets and Liabilities filed by the Debtor, all depositions taken, and the examination of the Debtor conducted under Bankruptcy Rule 205.

Count I of the Adversary Complaint alleged that the Debtor transferred or concealed property with the intent to hinder, delay or defraud the Plaintiff-Creditor and to further hinder, delay or defraud the Trustee of the estate charged with the custody of the property of the estate under the Bankruptcy Code. This Count is bottomed upon Section 727(a)(2) of the Bankruptcy Code.

Count II of the Adversary Complaint alleges that the discharge of the Debtor should be denied on the grounds set forth in Section 727(a)(3), alleging that the Debtor concealed, destroyed, mutilated, falsified or failed to keep and preserve records and papers from which the financial affairs of the Debtor could be ascertained.

Count III of the Adversary Complaint seeks the denial of the discharge of the Debtor in contravention of Section 727(a)(4), basically alleging that the Debtor did knowingly and fraudulently make the false oath and account in connection with these instant bankruptcy proceedings.

Count IV of the Adversary Complaint alleged that the Debtor, in contravention of Section 727(a)(5) of the Bankruptcy Code, failed to satisfactorily explain any loss of assets or deficiency of assets to meet the Debtor's liabilities.

Count V of the Adversary Complaint seeks to block the dischargeability of the indebtedness owed by the Debtor to CHASE, since the Debtor allegedly obtained credit or an extension of credit from CHASE by utilizing a materially false financial statement in contravention of Section 523(a)(2).

The Debtor filed a motion to dismiss the adversary complaint and an answer, which included affirmative defenses. The Debtor made demand for jury trial in connection with Count V of the Complaint, non-dis-

chargeability of CHASE's debt. The Court denied the motion to dismiss, and upon Defendant's waiving of the right to trial by jury in connection with the non-dischargeability of CHASE's debt, set the matter for trial before the Court without jury. Extensive discovery proceedings were had and several continuances were granted at the request of CHASE, and the matter was tried before the Court on June 25, 1981.

The Trustee of the Debtor's estate was granted several extensions to commence adversary proceedings to object to the Debtor's discharge. The last extension expired on June 26, 1981, one day subsequent to the trial. The Trustee neither joined in these instant adversary proceedings nor did he file an independent adversary proceeding to deny the Debtor's discharge although he and his attorney were in attendance at the trial.

During trial and at the conclusion of CHASE's case, the Debtor moved for a directed verdict of dismissal of the five count complaint; the motion was granted as to Counts II, IV and V. Said Counts, Count II, seeking the denial of discharge based upon violation of Section 727(a)(3) of the Code—Destruction of records; Count IV, seeking denial of the discharge under Section 727(a)(5) of the Code, that the Debtor failed to satisfactorily explain any loss of assets or deficiency of assets; and Count V, seeking the denial of dischargeability of CHASE's debt pursuant to Section 523(a)(2), obtaining credit or an extension of credit by the presentment of materially false financial statements. Since CHASE failed to establish a prima facie case as a matter of law, said Counts were required to be dismissed.

The remaining Counts, i.e., I and III, were tried, and the Debtor offered evidence and testimony in support of his defenses.

The record reflects that the Debtor is a married man with ten children, and that at one time in the early 1970's he was actively engaged in New York, New Jersey and Indiana in real estate acquisitions and speculations. Subsequently, no doubt due to the general decline of real estate values and activities in transferring properties throughout the country, the Debtor's financial affairs took a severe turn and he became saddled with substantial obligations. The creditor, CHASE, obtained a judgment against the Debtor in the Broward County Circuit Court in 1979. Local Florida counsel for the Plaintiff, CHASE, in the latter part of December, 1979, or the early part of 1980, conducted a deposition in aid of execution. Subsequent to the examination and the furnishing of additional documents by the Debtor to said local Florida counsel for CHASE, several accounts maintained by members of the Debtor's family as well as the Debtor in the Summit Bank of Broward County, were garnished. Florida counsel for CHASE pursued some incidental procedures to discover assets of the Debtor. He did not recall the Debtor for further examination, nor was any independent investigation made to determine whether the Debtor maintained any other bank accounts in any bank in Broward County or anywhere else. There were some precursory examinations by CHASE's Florida counsel as to properties that the Debtor had owned in 1977 or 1978 in Dade County (See testimony of witness, WEBNER, pages 4 through 8, hearing June 25, 1981).

The Debtor testified that he was in dire financial straits, attempting to support his ten children, and the only source of income that the family had was dividends payable to his wife in connection with a spendthrift trust * settled by her father prior to his death. The dividends from said trust were subject to garnishment proceedings instituted by CHASE in the Supreme Court of the State of New York, County of New York.

---

* Nothing herein contained is a legal or factual determination in connection with the status of said spendthrift trust or the claims concerning the same. This language is used only to identify the source of income. It is sufficient for these proceedings to note that since the garnishment of the spendthrift trustee in New York, no payments were made to either Mr. or Mrs. Vogel. Mrs. Vogel commenced voluntary Chapter 7 proceedings, relief was granted, and on August 5, 1981, she was granted her discharge. Her voluntary Chapter 7 proceedings were consolidated with the Chapter 7 proceedings of the Debtor.

■ In an attempt to support his family, the Debtor borrowed money and performed services for one Ronald Sklar. Mr. Sklar advanced money to the Debtor for the sole purpose of aiding him to support his family. The procedure used was the opening of an account by Mr. Sklar permitting the Debtor to withdraw sums from said account as were needed to support the family. Mr. Sklar is listed as a creditor on the Debtor's schedules. The record is devoid of any proof to support CHASE's charge that the arrangement between Sklar and the Debtor was to effectuate a concealment of property with intent to hinder, delay or defraud the creditor CHASE or the Trustee. The Court finds that the loan proceeds were used for living expenses of the Debtor and his family, and that none of the loan proceeds or the income derived, if any, from the services rendered to Sklar, were transferred, removed or concealed with the intent to delay, hinder or defraud creditors, or CHASE.

■ The Adversary Complaint alleged that the Debtor, within one year prior to the date of the filing of the petition, transferred property to one Irwin Roberts, or a business in which Mr. Roberts was involved with intent to hinder, delay and defraud the creditor CHASE or the Trustee. Since there was no evidence in the record to support this allegation and CHASE failed to discharge its burden of proof in connection therewith, the Court finds as a matter of fact that no such transfer of property was made by the Debtor.

Although the Trustee was present in the Courtroom, he was not called to give testimony to prove the allegations in Count I of the Complaint that the Debtor hindered, delayed or defrauded the Trustee in connection with the discharge of his duties, or with custody of the property of the estate under the Bankruptcy Code.

■ The Court carefully examined the record and reviewed the evidence and testimony in connection with the proof offered by CHASE in its efforts to prove the allegations of Count III of the Adversary Complaint. The Court finds that there may have been some variations in the answers by the Debtor to questions 2(a), 2(d), 9, 11 and 12 in his Statement of Financial Affairs filed in these proceedings, and his testimony during his Bankruptcy Rule 205 examination, and during trial, however, said variations were inconsequential and de minimus. As to the answers to questions 9, 11 and 12 of said statement, CHASE introduced no facts to prove any of these allegations. As to the answers to question 2(c), the businesses in which the Debtor was engaged during six years immediately preceding the filing of the petition were all defunct and inoperative, and if the same were omitted from the Statement of Financial Affairs, said omission did affect the administration of the instant estate by the Trustee. In connection with the answer to question 2(d), the entire record, the evidence, and the testimony, clearly shows that the Debtor satisfactorily explained the answers to said question. In any event, income or assets which the Debtor held in 1979 or subsequent thereto, but prior to the commencement of these proceedings, would not be material unless the objecting party could show by a preponderance of proof that the misstatement (false oath) was made knowingly and fraudulently to in fact conceal assets. The evidence and testimony presented fails to demonstrate to this conclusion. Once again, CHASE failed to meet its burden of proof by sufficient competent evidence.

■ This Court is required to follow the rule of stare decisis, as enunciated by the United States Court of Appeals for the Fifth Circuit. In the Fifth Circuit, the rule of law requires specific proof by the objector to clearly and concisely establish the intent on the part of the debtor to conceal assets, to hinder and delay creditors, to make false oath, or to conceal property. This proof cannot be by inference, it must be positive. See *Shelby v. Texas Improvement Loan Company*, 280 F.2d 349 (1960).

In the Fifth Circuit, before the enactment of Bankruptcy Rule 402, the rule of law in connection with the successful objection to a discharge required the objecting

**550**

party to discharge by a preponderance of evidence the burdens of proof of one or more of the statutory grounds upon which the objections were based and not upon grounds of general equitable considerations or inferences. *Rice v. Matthews*, 342 F.2d 301 (1965).

In the Southern District of Florida, all judges have interpreted the applicable section of the Code (Section 727) to require that a debtor be denied a discharge only if the false oath relates to a material matter, that is to say, material to the condition of the estate. The basic rule in the Bankruptcy Courts in the Southern District of Florida is that any false oath must be made intentionally and must hinder the Trustee's administration of the estate. See *In re Fischer*, 4 B.R. 517 (1980); *In re Terkel*, 7 B.R. 801, 3 C.B.C.2d 513; *In Re Santoro*, 11 B.R. 41 (1981). See also, *Collier on Bankruptcy (15th Ed.), Par. 727.04*. See also cases in Bankruptcy Courts in other circuits, *In re Chambers*, 10 B.R. 92 (1981); *In re Schade*, 10 B.R. 115 (1981); *In re Haddad*, 10 B.R. 276 (1981); *In re Steinberg*, 4 B.R. 593 (1980); *In re McCloud*, 7 B.R. 819 (1980); *Matter of Graham*, 7 B.R. 5 (1980); *In re Martin*, 5 B.R. 188 (1980); *Matter of Dee*, 6 B.R. 784 (1980). In passing, the Court notes that in at least two pre-Code matters, courts were precluded from presuming fraudulent intent without concrete specific evidence to support the charge. *In re Tabibian*, 289 F.2d 793 (2 Cir. 1961) and *Avallone v. Gross*, 309 F.2d 60 (2 Cir. 1962).

Consequently, the Court concludes, the Plaintiff has failed to meet its burden of proof by sufficient, competent evidence to deny the Defendant his discharge under Section 727(a)(2), (3), (4) or (5) of the Bankruptcy Code, and to declare CHASE's debt nondischargeable under Section 523(a)(2). The Defendant is entitled to a judgment dismissing Plaintiff's complaint in conformity with these findings of fact and conclusions of law. As required by Bankruptcy Rule 921(a), a separate judgment will be entered to that effect. Costs will be taxed on motion.