In re Robert E. SCHADE and Maureen F. Schade, Debtors.

The ELGIN NATIONAL BANK, a national banking association, Plaintiff,

v.

Robert E. SCHADE, Defendant.

Bankruptcy Nos. 80 B 5295, 80 A 1074.

United States Bankruptcy Court,
N. D. Illinois,
Eastern Division.

March 18, 1981.

Daniel A. Weiler, Elgin, Ill., for plaintiff.

Ronald O. Roeser, Imming, Faber & Roeser, Chtd., Elgin, Ill., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on the Second Amended Complaint of the Elgin National Bank. The first count contains a complaint to determine the dischargeability of a debt. The second count contains a complaint objecting to discharge. This matter has been thoroughly briefed and argued by the parties. The court having considered the entire record and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor was an officer of a corporation which sold real estate. He also was a partner in a partnership which sold real estate. Debtor's business utilized a unique arrangement whereby the debtor guaranteed his customers that if their property was not sold within a certain listing period, the debtor would buy the customer's property.

The instant dispute arose from the financing of the debtor's business. On January 4, 1978 the debtor submitted a written, personal financial statement to the Bank. The statement indicated that the debtor had a net worth of $136,550. Between May 15, 1978 and November 22, 1978 the Bank made seven loans to Lookout America Financial Corporation. The debtor was an officer of said corporation. The total amount loaned was slightly under $400,000. Some of the loans were signed by the debtor as president of the corporation. On one of the loans the debtor signed as the secretary of the corporation. Some of the loans were not signed by the debtor at all, but were signed by a Mr. Bickers as president of the corporation. On May 15, 1978 the debtor and his wife and Mr. Bickers and his wife signed a continuing guaranty. Said guaranty guaranteed the loans the Bank made to the corporation up to $250,000. On November 22, 1978 the debtor and his wife signed another continuing guaranty guaranteeing the loans up to $400,000.

The debtor's personal financial statement of January 4, 1978 listed the value of his partnership interest in Leader Real Estate as an asset worth $75,000. No contingent liabilities were listed on the statement. The statement failed to show the liabilities of Leader Real Estate. The Bank claims that the January 4, 1978 statement was materially false because it failed to reflect certain debts that were included in the debtor's petition for relief. The debtor contends that the debts were not listed on the statement because they were incurred after January 4, 1978 or they were debts of the corporation and/or partnership or they were inadvertently omitted.

Count I of the complaint is to determine the dischargeability of a debt. The Bank claims the debtor owes it $13,306.91. The Bank contends that pursuant to 11 U.S.C. § 523(a)(2)(B) the debt is non-dischargeable.

## ISSUES

For the debt to be non-dischargeable the Bank must prove that the written financial statement was materially false, that the Bank reasonably relied on the statement and that the statement was made with an intent to deceive.

## DISCUSSION

The burden of proof is on the Bank and the Bank must prove each element of 11 U.S.C. § 523(a)(2)(B). Based on the totality of the circumstances, the court holds that the Bank has not met its burden of proof.

As is usual, the debtor listed all the corporation and partnership debts in his personal petition for relief. The Bank claims that fourteen debts listed in the petition should have been listed in the financial statement. Ten of the debts were listed as having been incurred in 1978. The Bank did not attempt to show that those debts were incurred before January 4, 1978. Absent such evidence, this court cannot hold that the financial statement was materially false as having failed to list the debts. Moreover, most of those debts, if not all, were not the debtor's personal debts but were debts of the corporation or partnership. The plaintiff cited no authority holding that failure of a debtor to list corporate or partnership debts on his personal financial statement is either a materially false statement or a statement made with intent to deceive.

Four debts incurred prior to 1978 were omitted from the financial statement. The debtor contends that two of the debts were corporate debts, thus they did not have to be listed on his personal financial statement. The omitted personal debts were a $9000 debt incurred in 1976 and a $750 debt incurred in 1977.

Based on the entire record, the court holds that the debtor did not submit the statement with an intent to deceive the Bank. The debtor believed that the corporate and partnership debts did not have to be listed on his personal financial statement. His bankruptcy attorney listed the debts on the bankruptcy petition to protect the debtor from all possible future liability. The court believes the debtor inadvertently omitted the two personal debts that were incurred before 1978. See *In re Mausser*, 4 B.R. 728 (Bkrtcy., S.D.Fla.1980). Finally, the debtor listed his interest in Leader Real Estate as an asset worth $75,000. The Bank presented no proof that the worth of Leader Real Estate was less than $75,000. It is conceivable that the figure of $75,000 represented the net worth of Leader Real Estate after its liabilities were subtracted from its assets.

Materiality, intent to deceive and reasonable reliance cannot be easily pigeonholed. The issue of materiality often relates to the issue of reasonable reliance. In the instant case, the debtor's net worth was shown as $136,550 on January 4, 1978. Four months later the first loan was made and the debtor and three other persons signed a continuing guaranty in the amount of $250,000. Eleven months later a continuing guaranty of $400,000 was signed by the debtor and his wife. Standing by itself the $9000 debt incurred in 1976 might be deemed material, but in the context of this case, it cannot be held material. With a net worth of only $136,550, the debtor guaranteed loans of almost $400,000. The court believes the Bank would have made the loans if the debtor's net worth was $127,550 instead of $136,550.

Moreover, the Bank's reliance on the statement was unreasonable. A thorough interview of the debtor, or investigation of his affairs, would have disclosed the liabilities of the corporation or the partnership. Also, the Bank did not rely solely on the debtor's personal financial statement. Three of the seven loan agreements were signed by James Bickers as president of Lookout America Financial Corp., while four of the loans were signed by the debtor as president of the same corporation.

The length of time between the financial statement and the first loan is relevant to both reliance and intent to deceive. On January 4, 1978 the debtor could not have intended to deceive the bank regarding loans that arose between May and November, 1978. The Bank's reliance upon a financial statement furnished in January was not prudent or reasonable.

To conclude, the debtor did not intend to deceive the Bank when he failed to list the corporate debts on his personal financial statement. He did not intend to deceive the Bank when he inadvertently omitted two debts from his personal financial statement even though the debts totalled $9,750. When the Bank loaned the corporation almost $400,000 and the debtor's net worth was $136,550, it cannot be said that the omission of two debts totalling $9,750 was material. The Bank fully intended the corporation, not the debtor, to pay back the loans. Finally, the Bank did not reasonably rely on the debtor's financial statement. The Bank could have investigated the debtor or the books of the corporation, but failed to do so. The minimal investigation proves the Bank relied on the corporation, not the debtor, to repay the corporate debts.

## II.

In Count II the Bank objects to the debtor's previously granted discharge based upon 11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) provides that:

(a) the court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

The Bank claims that the debtor knowingly and fraudulently made a false oath in connection with the case by failing to list George E. Faber as one of his creditors. Debtor claims that his failure to list Mr. Faber as a creditor was inadvertent because Mr. Faber was a creditor of the corporation. The debtor had personally guaranteed that specific corporate debt.

For the court to revoke the debtor's previously granted discharge, the Bank must prove that the statement contained material matter which the debtor knew was false and which was made willfully and with intent to defraud. 4 *Collier on Bankruptcy*, par. 727.04 (15th Ed. 1979). The court holds that the debtor did not knowingly and fraudulently omit from his schedules the debt owed to Mr. Faber. The debt in all probability was not intentionally omitted since an omitted debt may not be discharged. The debtor has nothing to gain by omitting such a debt. Finally, the debtor has amended his schedules to reflect the debt owed to Mr. Faber.

WHEREFORE, THE COURT HEREBY ORDERS that:

1. The debt of $13,306.41 allegedly owed by the debtor to the Bank be and hereby is determined to be a dischargeable debt.

2. That the previously granted discharge of the debtor be and hereby is declared to be valid and in full force and effect.