**In the Matter of Eugene A. GESSLER, Debtor.**

**Eric W. WOLLMAN, Plaintiff,**

v.

**Eugene A. GESSLER, Defendant.**

**Adv. No. 80–0193.**

United States Bankruptcy Court, W. D. Wisconsin.

June 5, 1981.

---

Scott Herrick, Reynolds, Gruber, Herrick, Flesch & Kasdorf, Madison, Wis., for Eric W. Wollman, plaintiff.

Eugene A. Gessler, pro se.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

The defendant, Eugene A. Gessler, has been involved in the business of the sale and purchase of real estate for ten to eleven years. On July 24, 1978, Gessler entered into a land contract with the plaintiff, Eric W. Wollman. Paragraph 6 of that contract states:

> 6. Vendor shall have the right to procure or maintain a first mortgage on the premises and the Purchaser agreess [sic] to join in any such mortgage for the sole purpose of subordinating the lien of this Land Contract to the lien of any such mortgage; provided that at no time shall the unpaid balance of such mortgage exceed the balance owed on this Land Contract, and further provided that upon any default by the Vendor in payments pursuant to such mortgage, the Purchaser shall have the right to make future Land Contract payments directly to the mortgagee until such default is cured.

A $10,000 payment was made by Wollman to Gessler at the closing. At that time, Gessler had a mortgage on the property with National Savings and Loan (National) which exceeded the amount owed by Wollman under the land contract by $700. Gessler stated at trial it was his intention to use part of the down payment to pay down the National mortgage. That was not done.

On July 29, 1979, National commenced an action to foreclose on Gessler's mortgage. On August 28, 1980, Gessler filed a chapter 7 petition in bankruptcy. National obtained relief from the stay in order to continue its foreclosure action. On February 13, 1981, judgment was entered in Dane County Circuit Court in favor of National for $25,930.87.

This proceeding was filed by Wollman November 14, 1980, to determine the dischargeability of Wollman's debts owed to him by Gessler in relation to the land contract and to obtain a judgment in the amount of the non-dischargeable debt. At the time of trial, March 31, 1981, Wollman had not redeemed the property and stated he did not yet have mortgage financing to redeem it.

Wollman seeks to have the claim against Gessler arising under the land contract and its related transactions declared non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A) which states:

> § 523. Exceptions to discharge.
> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
> (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

Section 523(a)(2)(A) supersedes § 17(a) of the Bankruptcy Act of 1898. The section remains substantially unchanged, therefore, case law under § 17(a) is applicable to Code cases. *In Re Miller*, 5 B.R. 424, 2 C.B.C.2d 849 (Bkrtcy.W.D.La.1980). In interpreting the elements required under § 17(a)(2) [§ 523(a)(2)(A) of the Code], the 7th Circuit Court of Appeals stated:

> § 17(a)(2) requires that for a debt to be non-dischargeable the bankrupt must have obtained the money or property through representations known to be false or made with reckless disregard for the truth amounting to willful misrepresentation. . . . In addition, the courts require a showing of fraudulent intent or moral turpitude on the part of the debtor, i. e., an intent to deceive. . . . These questions of knowing or reckless falsehood and intent to deceive are questions of fact . . . . [W]here, as here, a person knowingly or recklessly makes a false representation which the person knows, or should know, will induce another to make a loan, intent to deceive may logically be inferred. . . . Matera next contends, correctly, that § 17(a)(2) requires a finding that the creditor actually relied upon the false representations. . . . And of course such reliance must be reasonable. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979).

The three elements required for non-dischargeability of a debt under § 523(a)(2)(A) are:

(1) [T]hat the Defendant made a materially false representation.

(2) [T]hat the representation was made with intent to defraud; and

(3) [T]hat the Plaintiff relied on the false representation. *In re Ratajczak*, 5 B.R. 583 (Bkrtcy.M.D.Fla.1980).

At trial, Gessler admitted that his mortgage with National exceeded the amount owed on the land contract at the time of the closing and at all times thereafter. Therefore, the representation in paragraph 6 of the land contract was false at the closing and at all times thereafter. From Wollman's testimony, it is clear that when he paid the $10,000 down payment at the closing and in making his land contract installments he relied on the fact that there was not a mortgage for an amount greater than the amount he owed under the land contract. The remaining element required for the debt to be non-dischargeable is that the false statement made in paragraph 6 of the land contract was made with intent to defraud.

■ In *Matera, supra*, the court said: [W]here, as here, a person knowingly or recklessly makes a false representation which the person knows, or should know, will induce another to make a loan, intent to deceive may logically be inferred.

Gessler knew that the amount of the mortgage exceeded the amount owed under the land contract at the time of closing, but he stated that he did not intend for his mortgage to exceed the amount owed on the land contract. Gessler stated that he intended to use proceeds received at the closing to pay down the mortgage to a level below the amount owing on the land contract, but his actions show no effort to comply with that intent. The terms of the closing did not include a direct payment to the mortgagee. Gessler did not disclose at the closing that the mortgage presently exceeded the land contract amount or that the situation would be rectified from proceeds he received at the closing. For an individu-

al with ten to eleven years of experience in real estate matters, his actions do not show an intent to comply with paragraph 6 of the land contract. The only reasonable inference from the circumstance is the one found in *Matera, supra*; that intent to deceive must be inferred from a knowingly made false statement. Intent to deceive may be inferred despite the debtor's avowal to the contrary. *In Re Black*, 373 F.Supp. 105, 107 (E.D.Wis.1974). The debt created by the paragraph 6 false statement meets the requirements of 11 U.S.C. § 523(a)(2)(A) and therefore is non-dischargeable.

■ The amount of a judgment based on the non-dischargeable debt must also be determined. Debt is defined by 11 U.S.C. § 101(11) as meaning "liability on a claim." Using this definition, an unliquidated amount could be non-dischargeable under 11 U.S.C. § 523. However, plaintiff has sought and is entitled to a judgment in an amount certain.

■ The amount recoverable by a purchaser under a land contract when one of the contract's terms is breached was described by Cornelius in *The Law of Land Contracts*, § 219, page 509 (1922). There he states:

The measure of damages to which a purchaser is entitled, is, as a general rule, the actual loss or injury sustained by the purchaser as the fair legal and natural result, under all the circumstances, of the vendor's breach, but no recovery can be had for speculative or remote damages, and if no special damages are shown nominal damages only can be recovered.

In this case, the vendor breached his duty to keep his mortgage smaller than the amount owed to him under the land contract. Using the general rule stated above, Wollman is entitled to damages for his injuries that were a result of that breach. No evidence was given which showed the foreclosure was the legal and natural result of Gessler's breach of the land contract terms. Without such a showing, all costs to Wollman resulting from the foreclosure are not the correct measure of Wollman's damages. Only the

expense Wollman incurred because of the amount owed on the mortgage that was greater than the amount he owed Gessler under the land contract is recoverable as damages. The amount owed by Gessler in excess of the amount owed by Wollman on the land contract increases the amount required to redeem the property. This injury, $4,763.97, is a natural result of Gessler's breach and is recoverable by Wollman. Similarly, the 8¾ percent interest running on the $4,763.97 portion of the judgment is also attributable to Gessler's breach and is, therefore, recoverable.

■ There is no evidence explaining the other interest expense requested by Wollman as part of his damages. Without such evidence, that expense cannot be found to be a natural result of Gessler's failure to comply with paragraph 6 and is not recoverable by Wollman. The attorneys fees listed are presumably for representing Wollman's interest in the foreclosure action. As discussed above, the foreclosure action itself was not necessarily due to the failure by Gessler to comply with paragraph 6 of the land contract. Only the attorneys fees incurred in that action because of the increased size of Gessler's mortgage would be recoverable. There is no evidence that the increased size of the mortgage created higher fees, therefore, the attorneys fees are not a natural result of Gessler's breach and cannot be recovered by Wollman.

In addition, an argument can be made based on the benefit of the bargain measure for damages. When a vendor commits a total breach of the land contract to convey land, the vendor "is liable for the loss of the bargain damages to his purchaser, plus any consequential damages recoverable under the general rule." Dobbs, *Remedies*, Land Contracts § 12.8, page 833. Wollman contracted to buy the property for $31,500 and for Gessler's mortgage to not exceed the amount owed pursuant to the land contract. By those terms, Wollman's bargain included the right to not face a foreclosure judgment for an amount greater than the amount he owed under the land contract. That amount was to limit his exposure. In fact, Wollman faces a foreclosure judgment that,

if paid, increases the purchase cost of the property by $4,763.97 plus interest at 8¾ percent. If Wollman cannot recover this amount he is in fact being required to pay twice, once to Gessler and once to National, in order to keep property for which he bargained to pay only $31,500.

Upon the foregoing which constitute my findings of fact and conclusions of law in this case, it is hereby

ORDERED that defendant-debtor's debt to plaintiff is not discharged, and it is further

ORDERED that plaintiff may have judgment against defendant for the amount of $4,763.97 plus interest from the date of trial at the rate of 8¾ percent until paid.