**In re Elizabeth L. WATKINS, Debtor.**

**Claire VAN ROY, Plaintiff,**

v.

**Elizabeth L. WATKINS, Defendant.**

**Bankruptcy No. 87–02377–BKC–SMW. Adv. No. 87–0549–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

March 22, 1988.

D. Jean Ryan, Law Offices of Patricia A. Redmond, Miami, Fla., for creditor.

Daniel Gonzalez, Koppen, Watkins Partners & Associates, P.A., Miami, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court on February 23, 1988, on the creditor's Complaint Objecting to Discharge pursuant to 11 U.S.C. § 727 and § 523, and the Court having observed the candor and demeanor of the witnesses, examined the evidence presented, considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following findings of fact and conclusions of law:

The parties to this suit met in 1964 and became friends and companions. In 1979, the debtor became involved in divorce proceedings and borrowed money from the creditor to pay a retainer to her divorce attorney. The debtor promised the creditor that repayment of these funds would have first priority from any proceeds received by the debtor as a result of the divorce proceedings. The debtor anticipated receiving substantial sums through the divorce proceedings, as the debtor and her former husband held significant property interests at the time the divorce was filed.

Shortly thereafter, the creditor purchased a condominium, in her name, on behalf of the debtor. The creditor made the initial down payment and subsequent monthly payments. The terms of the purchase arrangement required monthly payments, with a balloon payment due to the seller at the end of a two-year period. The

debtor kept, in her possession, the keys and documents relating to the condominium, and arranged for the rental of the unit at various times during the two-year period. The creditor was assured that she would be repaid for all monies advanced by her, from any proceeds that the debtor received from, or as a result of, the divorce proceedings.

On March 6, 1981, the debtor obtained a Final Judgment of Dissolution of Marriage. Pursuant to that agreement, the debtor received the marital home and contents thereof; real property in Brevard County, Florida (free and clear of all liens and encumbrances); certain cash payments approximating $50,000, and $306,000 in lump sum alimony payable in specified monthly installments. Additionally, the payments due as lump sum alimony were secured by a mortgage on the former husband's interest in a particular office building. The creditor was never informed that the judgment had been entered, nor did she receive any repayment of funds previously advanced to the debtor, from the proceeds thereof.

Shortly thereafter, in April of 1981, the debtor, with the creditor's assistance, obtained a bank loan to pay off the balloon mortgage now due and owing on the condominium. Upon receipt of the bank loan, the debtor called the creditor and informed her that she needed the creditor to immediately execute certain documents to enable her to pay off the balloon mortgage so that they would not lose the condominium unit. The debtor came to the creditor's house and presented the creditor with a document, requesting her signature. The creditor did not know that she was signing a deed conveying the condominium unit to the debtor, as she was relying on the debtor's assertion that these were documents necessary to pay off the balloon mortgage on the unit, and because the debtor partially covered the top part of the document when she presented it to the creditor for signature. As she signed this document, the creditor noticed that her signature needed to be notarized, but the debtor assured her that she had a friend that could do it, and due to the time restraints, the debtor would later obtain the necessary notarization.

Subsequently, the debtor also prepared a letter to the condominium association, under the creditor's signature, which set forth the alleged change in ownership of the condominium unit. The creditor did not personally sign this letter, nor did she authorize the debtor to sign same on her behalf. In October of 1982, the debtor sold the condominium unit to a third party. The sale was never disclosed to the creditor, and the creditor never received any repayment from the proceeds of this sale. The creditor first learned that the title to this condominium had been transferred from herself to the debtor some time thereafter, following several unsuccessful attempts to contact the debtor, resulting in information that the condominium had been sold and that the debtor had moved out of town.

In August of 1982, the creditor was planning to take a vacation and wanted a promissory note, setting forth the amount owed to her, executed by the debtor. The creditor planned to include this asset in her last will and testament, which she was having prepared in anticipation of her forthcoming trip. The creditor called the debtor and asked her to prepare the promissory note. A promissory note was prepared by the debtor, signed and delivered to the creditor's home. The note was dated August 29, 1982 and was in the face amount of $32,541.84. Unbeknownst to the creditor, the note also contained the following repayment provision:

"Sixty months or, upon final payment of the total proceeds of sale of 9700 N.E. 12th Avenue, Miami Shores, Florida, *the later date.*" (emphasis added)

However, this legend did not represent the agreement of the parties. The creditor was still under the belief that she would receive repayment of her debt from the proceeds the debtor received from the sale of the marital home. No other terms had been discussed or negotiated between the parties.

Over a period of time, the debtor also obtained other funds and items of furnishings from the creditor, while constantly

reassuring the creditor that she would be paid from any proceeds the debtor received from the sale of the marital home, or from the divorce proceedings.

In July, 1983, the debtor sold the marital home. As part of that sale, the debtor received a promissory note in the amount of $55,000, which she later discounted and derived cash proceeds thereon. The creditor was not advised that the marital home had been sold, nor did she receive any repayment from the proceeds thereof. Once again, the creditor only discovered that the home had been sold when she was unable to contact the debtor by telephone, and was later advised that the debtor had moved out of town.

Finally, in 1984, the creditor sued the debtor in state court for the funds owed. A settlement agreement was reached, and subsequently breached by the debtor, which resulted in a final judgment, dated February 24, 1987, for this creditor in the amount of $55,000.

On May 20, 1987, the debtor signed a subordination and spreading agreement which diluted her mortgage interest in the office building held as collateral for the lump sum alimony. On July 7, 1987, the debtor filed a Petition for Relief under Chapter 7. The original schedules filed by the debtor in this case did not disclose the extent of the debtor's lump sum alimony award or her interest in the real property held as security therefor. After the Section 341 Meeting, after the time to object to discharge and dischargeability had run, and after the instant complaint was filed against the debtor, the debtor amended her schedules to reflect the lump sum alimony and the real property interest securing same.

The creditor timely filed this Complaint Objecting to Discharge and Dischargeability pursuant to 11 U.S.C. § 523 and § 727. The Defendant answered and counterclaimed against the creditor, asserting harrassment by the creditor's initiation of criminal investigations and pursuance of this action.

The provisions of 11 U.S.C. § 523(a)(2)(A) provide that a discharge in bankruptcy does not discharge an individual debtor from any debt that is for money, property, services or an extension, renewal or refinancing of credit, to the extent that it was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ The frauds included in this exception to discharge are those which involve moral turpitude or intentional wrong; fraud implied at law, without bad faith or immorality, is insufficient. *Hennessy Cadillac v. Green (In re Green),* 5 B.R. 247 (Bankr.N.D.Ga.1980). To be excepted from discharge, the false representations must be knowingly and fraudulently made and relied upon by the other party. *Fournet v. Miller (In re Miller),* 5 B.R. 424 (Bankr.W. D.La.1980); *Wollman v. Gessler (In the Matter of Gessler),* 11 B.R. 489 (Bankr.W. D.Wis.1981); *Volk v. Gelfand (In re Gelfand),* 47 B.R. 876 (Bankr.E.D.Pa.1985); *Livingston v. Hospelhorn (In re Hospelhorn),* 18 B.R. 395 (Bankr.S.D.Oh.1981); *McMillan v. Firestone (In re Firestone),* 26 B.R. 706 (Bankr.S.D.Fla.1982).

However, intention to deceive may be inferred from a knowingly made false statement when, based upon the circumstances of the case, this inference is reasonable. See, *Gessler, supra; Firestone, supra.* An intent to deceive may also be logically inferred from a false representation which the debtor knows or should know will induce another to make a loan. *In re Kimzey,* 761 F.2d 421 (7th Cir.1985).

■ In the instant case, the Court finds that the debtor purposely led the creditor to believe that repayment would be forthcoming from the settlement of her divorce proceedings and from her entitlement to marital property and that the creditor relied on these statements. However, even after receipt of the divorce funds and properties, the debtor did not disclose said receipts, and further assurances were made that payments would be forthcoming from these sources. Accordingly, the Court finds that these statements and assurances were sufficient to constitute false represen-

tations knowingly made by the debtor with the intent to deceive the creditor for the purpose of inducing the creditor to advance additional funds and to forestall collection efforts.

In addition, the Court finds that the acts of the debtor were designed to trick the creditor into signing the warranty deed, thereby conveying ownership of the condominium unit to the debtor, without repayment of any expenses incurred by the creditor on the debtor's behalf. The repayment terms on the promissory note were further indications of the debtor's attempts to trick and deceive the creditor. Additionally, the debtor's act of submitting a letter to the condominium association, allegedly under the creditor's signature, constitutes an action of actual fraud. The Court finds that these acts of trickery and forgery, rise to the level of actual fraud sufficient to deny discharge of this debt under 11 U.S.C. § 523(a)(2)(A).

This creditor has also objected to the debtor's discharge under 11 U.S.C. § 727(a)(4)(A) which provides:

(a) The court shall grant the debtor a discharge, unless—

(4) The debtor knowing and fraudulently, in or in connection with the case

(A) made a false oath or account.

Bankruptcy case law is replete in holding that a false oath knowing and fraudulently made by the debtor in connection with the case, which is material, is sufficient to deny a debtor's discharge. *In re Melnick*, 360 F.2d 918 (2nd Cir.1966); *Matter of Ramos*, 8 B.R. 490 (Bankr.W.D.Wis.1981); *Chase Manhattan Bank v. Vogel (Matter of Vogel)*, 16 B.R. 546 (Bankr.S.D.Fla.1981); *McCue v. Galbraith (Matter of Galbraith)*, 17 B.R. 302 (Bankr.M.D.Fla.1982); *Raymos v. Collins (In re Collins)*, 19 B.R. 874 (Bankr.M.D.Fla.1982); *In re Savel*, 29 B.R. 854 (Bankr.S.D.Fla.1983); *Horowitz v. Wasserman (In re Wasserman)*, 33 B.R. 779 (Bankr.S.D.Fla.1983); *Bank of Miami v. Espino (In re Espino)*, 48 B.R. 232 (Bankr.S.D.Fla.1985) aff'd. 806 F.2d 1001 (11th Cir.1986).

■ The subject matter of a false oath is "material" and sufficient to bar the debt-

or's discharge, if it impairs the debtor's estate, concerns discovery of assets, or the existence and/or disposition of the debtor's property. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984). Deliberate omissions by the debtor may result in the denial of the debtor's discharge and the debtor's assertions that the assets are worthless or unavailable to creditors does not relieve the debtor from disclosing all his property interests and transfers of same. Accordingly, a knowing and fraudulent omission from a sworn statement of affairs, or schedules, may constitute a false oath sufficient to bar discharge in bankruptcy.

Furthermore, the debtor may not hide behind the "invisible cloak of disclosure" by alleging that, although not listed in the appropriate schedules, the assets were revealed to the trustee at the Section 341 Meeting of Creditors and thereafter. This is simply not the test. Sound policy considerations mandate that the requirements to list all assets and liabilities is an absolute obligation of those seeking a discharge of their debts through bankruptcy. To require otherwise would put the debtor in the position of determining which assets are worthy of disclosure and which are not—a rather self-serving determination. Creditors are entitled to judge for themselves what will be of benefit and what will prejudice them. This determination is the creditors' to make based upon a requirement of full disclosure from the debtor. The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Code. See, *Chalik, supra* and *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330 (2nd Cir.1969).

■ In the schedules as originally filed by this debtor, the debtor did not disclose that she was fully vested in lump sum alimony in the amount of $306,000.00; that said interests were secured by a mortgage on real property, and that this interest was subordinated two months prior to the filing of the petition in bankruptcy.

The Court finds, by the debtor's own testimony, that the debtor was fully knowl-

edgeable and aware of the extent of the lump sum alimony awarded to her and that the same was fully vested. The debtor was also fully cognizant that she held a mortgage on an office building as security to insure that these payments were forthcoming. Additionally, the debtor was aware that shortly before she filed her petition in bankruptcy, she subordinated her mortgage position to allow her former husband to obtain additional loans with this particular building as collateral. Based upon the testimony and documentary evidence, the Court finds that the debtor was fully aware of these assets and the transfers regarding same, yet failed to disclose them.

Amendments to the debtor's schedules, made on the eve of trial on this complaint objecting to discharge for failure to disclose assets of the estate, is insufficient to purge the debtor from the false oath made relative to the filing of the original schedules and petition. Although Bankruptcy Rule 1009(a) allows a debtor, as a matter of course, to amend his schedules at any time before the case is closed, the failure to file said amendments, prior to the initiation of an action for failure to disclose assets of the estate, shall prevent this Court from considering such untimely amendments in a determination of the allegations as asserted by the creditor.

The Court further finds that the debtor testified under oath at the Section 341 Meeting that the sale of her house generated "nothing," when questioned about same by the trustee. This testimony is in direct contradiction of the debtor's admission at trial, that she received a $55,000 promissory note from the purchasers of the marital home which she later discounted and sold for her personal use and benefit. Accordingly, after careful consideration of the testimony and evidence submitted, the Court finds that this failure of full disclosure on statements and schedules submitted as accurate, under penalty of perjury, and the contradictory testimony submitted under oath, constitutes a false oath knowing and fraudulently made by the debtor in connection with the case which is sufficiently material to these proceedings to deny a debtor's discharge.

The Court is not unmindful that the testimony of the debtor and creditor was directly contradictory. Therefore, the Court observed the candor and demeanor of the witnesses, considered the testimony, and examined the evidence presented with great care. Based upon this thorough analysis, the Court finds that the debtor's credibility leaves much to be desired.

The Court is also cognizant of the conflict in testimony between the creditor and the notary public regarding the notary's marking on the warranty deed conveying title of the condominium unit from the creditor to the debtor. Having carefully considered the notary's testimony regarding her standard procedure of notarizing documents, the Court resolves this conflict in testimony in favor of the creditor.

As set forth herein, the Court finds that the creditor's objection to dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) and discharge pursuant to 11 U.S.C. § 727(a)(4)(A) is sustained and the debtor's discharge is hereby denied. The Court also finds that the counterclaim asserted by the debtor is without merit, and is accordingly dismissed.

A separate final judgment of even date has been entered in conformity herewith.