## In re Randal BOONE, Debtor.

## Ronald S. Freedman and Dr. Jack Freedman, Plaintiffs,

v.

## Randal Boone, Defendant.

Bankruptcy No. 97–18381–9P7.
Adversary No. 98–96.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

May 25, 1999.

---

Wayde P. Seidensticker, Jr., Naples, Florida, Alberto F. Gomez, Jr., Tampa, Florida, for plaintiffs.

Robert C. Gebhardt, Naples, Florida, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

IN THIS Chapter 7 liquidation case, Dr. Jack Freedman and Donald S. Freedman (Plaintiffs) filed a suit challenging not only the dischargeability of the debt owed to them by Randal Boone (Debtor), but also the Debtor's right to the benefit of the general bankruptcy discharge. The claims of the Plaintiffs as appear in their Third Amended Complaint are set forth in five Counts.

The claim in Count I is filed pursuant to § 727(a)(2) and is based on the allegation that the Debtor transferred or concealed certain of his properties with the intent to hinder, delay or defraud creditors of the estate. The claim in Count II is filed pursuant to § 727(a)(4) and is based on the allegation that the Debtor committed false oath by failing to furnish the required information on his Schedules and Statement of Financial Affairs. Count III is filed pursuant to § 727(a)(3) and is based on the allegation that the Debtor failed to keep or preserve adequate books and records from which his financial condition could be ascertained. The claim in Count IV was filed pursuant to § 523(a)(2)(A) but was dismissed with prejudice by the Court on October 29, 1998. The claim in Count V is filed pursuant to § 523(a)(6) and is based on the contention that the Debtor caused a willful and malicious injury to the Plaintiffs and, therefore, the debt owed to them by the Debtor shall be excepted from the general discharge.

At a duly scheduled pretrial conference, the parties agreed that the claims in Counts I, II and III shall be tried first and the nondischargeability claim will only be tried in the event the Plaintiffs fail to prevail on any of their claims which relate to the Debtor's right to a general discharge.

The facts relevant to the claims under consideration as established at the duly scheduled final evidentiary hearing by testimony of witnesses and by documentary evidence offered and admitted into evidence can be summarized as follows:

On October 17, 1997, the Debtor filed his Petition for relief under Chapter 7 of the Bankruptcy Code in the Ft. Myers Division. On his Petition, the Debtor stated his residence as Coral Springs, Florida which is in the Southern District which was his residence for the past fourteen years, a residence which he owned jointly with his wife who still resides in that family home with their children. The Coral Springs address also appears on the Debtor's car registration and documents executed by him in connection with leasing an automobile.

It is without dispute that he also maintained at the time relevant an apartment in Naples, Florida, which is in the Middle District of Florida. He refers to his apartment in Naples as his temporary residence and the house in Coral Springs as his home.

The Debtor had a controlling interest in Southwest Florida Lighting & Electric Supply, Inc. (Southwest Lighting) and was the president and sole stockholder of that corporation until November of 1997 when contemporaneously with his Chapter 7 Petition he also filed a Chapter 7 for Southwest Lighting. Since the filing of these cases, the Debtor is acting as a consultant for companies located in Tennessee and West Palm Beach. The Debtor, who has some college education, has basically been in sales his entire adult life.

## Count I

### Fraudulent Transfer/Concealment

### § 727(a)(2)

The transfers claimed to be fraudulent as appear from the record are the following: Payments of joint debts owed by the Debtor and his spouse and transfer of a Ford Explorer. The concealment of assets includes the Debtor's failure to schedule household goods and furnishings, including stereo equipment, television sets and household appliances, all located at his Coral Springs residence and unreported cash receipts one month prior to the filing of the Petition and failure to disclose income of $107,116.79 during the tax years 1995, 1996 and 1997 received from Southwest Lighting.

## Count II

### False Oath

### § 727(a)(4)

The false oath claim basically relates to the Debtor's failure to disclose information

required to be furnished in the Statement of Financial Affairs, failure to furnish correct answers to interrogatories and failure to schedule numerous assets on the Schedule of Assets filed with the Petition.

## Count III

### Failure to Keep Books and Records

### § 727(a)(3)

The primary thrust of this claim relates to the claimed payment to the Debtor in excess of $100,000 which, according to the Debtor, represents reimbursement of expenses from Southwest Lighting and repayment of an alleged loan by Southwest Lighting. The Debtor was not able to produce one single document to support these transactions. The alleged loan is not evidence by a promissory note or any other document executed by him as president of Southwest Lighting evidencing this alleged obligation of Southwest Lighting.

Basically these are the relevant facts based on which the Plaintiffs contend that they are entitled to a determination that the Debtor forfeited his right to the benefits of the general bankruptcy discharge based on § 727(a)(2), (3) and (4) of the Code.

## Count I

### Fraudulent Transfer/Concealment

### § 727(a)(2)

The claim in this Count is based on § 727(a)(2), which, in pertinent part, provides that:

> The court shall grant the debtor a discharge, unless the debtor, with the intent to hinder, delay, or defraud a creditor ... has transferred ... or concealed or has permitted to be transferred, removed ... or concealed property of the debtor, within one year before the date of the filing of the petition.

■ This Section condemns two specific conducts: transfer of property within one year of the commencement of the case which but for the transfer would be property of the estate or concealment of property within one year. Both conducts require that it must be done with the specific intent to hinder, delay or defraud a creditor.

■ The discharge provisions of the Bankruptcy Code have been traditionally construed to be remedial and courts have uniformly held that it shall be liberally construed in favor of the Debtor and strictly construed against a creditor who challenged the Debtor's right to a discharge. *Equitable Bank v. Miller*, 39 F.3d 301 (11th Cir.1994). The alleged fraudulent transfers condemned by this Section are that the Debtor has paid joint debts of the Debtor and his spouse with his funds. There is not an iota of evidence in this record to justify the finding that these payments could possibly be a fraudulent transfer in the context of bankruptcy.

■ The next alleged transfer is not really a transfer but concealment and relates to the Debtor's failure to schedule on Schedule B all the household goods, furnishings and appliance located both in his apartment in Naples and also at the Coral Springs residence. While this allegation may form the basis for a false oath in bankruptcy, the claim in Count II, it certainly would not qualify for an actionable concealment based on this record.

■ The next alleged fraudulent transfer relates to a sale by the Debtor of a Ford Explorer to a former employee. While it might be true that this transfer may qualify as a fraudulent transfer under § 548 in that the Debtor received substantially less than the reasonable equivalent value of the item transferred, again there is no evidence that this sale was in order to remove the property from the reach of creditors or it was really a pretended transfer under which the Debtor retained control and possession of the vehicle in spite of the alleged transfer. Again, the fact that the Debtor did not account for the disposition of the proceeds received, while might be the basis to deny the dis-

charge under § 523(a)(5), a ground which is not alleged in this complaint, it would not qualify as concealment.

The same comments are equally applicable to the cash receipts of $1,500 one month prior to the bankruptcy.

■ The last item presented in support of this claim is the Debtor's undisclosed income of $107,116.79. This amount apparently represents payments made by Southwest Lighting to pay the Debtor's personal expenses such as payments for the Debtor's personal residence, car lease payments, automobile insurance payments and payments on the Debtor's personal credit cards. While it might be argued that these payments are deemed to be taxable income under the Internal Revenue Code, the failure to report these items again fails to satisfy the satisfactory showing of concealment although it might be and will be considered in connection with the claim based on false oath set forth in Count II.

## Count II

### False Oath

### § 727(a)(4)

■ The operating elements of this Section, § 727(a)(4), which the creditor must establish with the preponderance of the evidence is:

1. the Debtor made a statement under oath;
2. such statement was false;
3. the Debtor knew the statement was false;
4. the Debtor made the statement with fraudulent intent or reckless disregard for the truth; and
5. the statement related materially to the bankruptcy case.

*Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Hall,* 126 B.R. 117 (Bkrtcy.M.D.Fla.1991); *In re Arcuri,* 116 B.R. 873, 880 (Bankr.S.D.N.Y. 1990).

The disposition of this claim is not that simple and clearly this record leaves no doubt that the Debtor did in fact fail to disclose multiple items which under the Code he was required to disclose. For instance, it is without dispute that the Debtor did not disclose his interest in the household goods, furnishings and appliances in the Naples apartment and also in his residence in Coral Springs; he failed to disclose the IBM Federal Employees Credit Union account; he failed to disclose that he furnished a financial statement in connection with the lease of an automobile; he failed to disclose an interest in a limited partnership; he failed to disclose an interest in an IRA account; failed to disclose a security agreement in his response to interrogatories and his interest in securities and investments.

■ The requirement that the Debtor furnish information under oath was designed to assure that the Debtor provides to the trustee and creditors complete and reliable information which is essential to the efficient administration of the estate of a Chapter 7 Debtor. *In re Cutignola,* 87 B.R. 702 (Bkrtcy.M.D.Fla.1988); *In re Watkins,* 84 B.R. 246, 250 (Bkrtcy.S.D.Fla. 1988); *In re Chalik,* 748 F.2d 616 (11th Cir.1984). It is not for the Debtor to decide whether a particular item does or does not have value. The duty of the Debtor to disclose is unquestionable. *In re Mazzola,* 4 B.R. 179 (Bkrtcy.D.Mass. 1980). There is no question that an omission of an asset from the Schedule which is isolated may be due to inadvertence or carelessness and may not suffice to sustain a claim of false oath. It is equally true that a series of omissions which reveals a pattern would support the claim that the Debtor committed false oath in connection with the execution of the Statement of Financial Affairs and Schedule of Assets. Thus, numerous omissions of assets may constitute a pattern demonstrating either an intentional false oath or a reckless disregard for the truth. *In re Clawson,* 119 B.R. 851 (Bkrtcy.M.D.Fla.1990). The ex-

planation for these omissions by the Debtor at most was ambiguous and sustained equivocation, certainly not sufficient to be acceptable.

 Considering the evidence in its totality, this Court is satisfied that the Plaintiffs did establish with the requisite degree of proof that the Debtor did in fact commit a false oath thus is guilty of the conduct proscribed by § 727(a)(4).

### Count III

### Failure to Keep Books and Records

### § 727(a)(3)

Under this Section, the initial burden is on the creditor but the burden shifts to the Debtor unless it appears that the absence of books and records is justified under the circumstances. *In re Goblick,* 93 B.R. 771 (Bankr.M.D.Fla.1988); *In re Urban,* 130 B.R. 340 (Bankr.M.D.Fla. 1991). The duty to keep books and records is not absolute and the Code does not specify what type of books, if any, the Debtor must keep or preserve. The test is, are books and records available from which the Debtor's financial condition could be ascertained. As noted earlier, until the Debtor filed his Petition in November of 1997, he was a principal, stockholder and president of Southwest Lighting thus theoretically he was not required to maintain extensive books and records other than possibly copies of income tax returns and records of bank accounts. As noted, since the filing he has acted as a consultant and not in business for himself. In this particular situation, however, it appears that the Debtor did receive in excess of $107,000 for reimbursement of personal expenses in connection with the operation of the corporation for which he has no documentation whatsoever to establish that these payments by Southwest Lighting were in fact reimbursement of expenses incurred by him on behalf of the corporation or repayment of an alleged loan he claims to have made to the corporation. Neither does the Debtor have any documentation to establish the disposition of $1,500, which he received shortly before the commencement of this case.

In sum, based on this record, this Court is satisfied that the Plaintiffs did establish with the requisite degree of proof the claims set forth in Count II (false oath) and Count III (failure to maintains books and records) but failed to establish the operating elements of the claim based on § 727(a)(2), fraudulent transfer and concealment.

A separate final judgment will be entered in accordance with the foregoing.