**In re Irving FELDMAN, Debtor.**

**William A. Looney, Plaintiff,**

**v.**

**Irving Feldman, Defendant.**

**Bankruptcy No. 98–30721–BKC–SHF.
Adversary No. 98–3156.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Nov. 18, 1999.

Thomas D DeCarlo, West Palm Beach, FL, for plaintiff.

Alvin S Goldstein, Boca Raton, FL, for Irving Feldman, Boca Raton, FL, for defendant.

### MEMORANDUM OF OPINION AND ORDER[1]

RANDOLPH BAXTER, Bankruptcy Judge.

Plaintiff, William A. Looney (Looney), a creditor of the Debtor's bankruptcy estate, objects to the Defendant Irving Feldman (the Debtor) receiving a general discharge in bankruptcy pursuant to 11 U.S.C. § 727. Upon the conclusion of a trial and an examination of the evidence adduced, the following factual findings and conclusions of law are rendered.

Jurisdiction is proper under 28 U.S.C. § 1334, with core matter jurisdiction acquired under 28 U.S.C. § 157(b)(2)(A)(J) and (O).

The Pretrial Order in this proceeding indicates that the following facts are admitted and require no proof:

1. The Defendant, Irving Feldman, (the Debtor) filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on February 13, 1998. At the time of the filing of the petition in this case, Defendant swore that all of the information contained therein was true and correct.

2. Defendant's certification had the like, force and effect of an oath.

3. William Looney, Plaintiff, is a creditor of Irving Feldman.

A resolution of this adversary proceeding requires the Court to determine whether the Debtor violated any of the proscribed acts under § 727(a)(2), (a)(3), (a)(4), or (a)(5) of the Bankruptcy Code. Under § 727 of the Bankruptcy Code, the following is noted in pertinent part:

§ 727. Discharge.

(a) The court shall grant the debtor a discharge, unless ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. § 727(a)(2)(3)(4) and (5).

---

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D.Ohio, sitting by designation.

## Analysis

■■■ Although clearly sanctioned under § 727 of the Bankruptcy Code, the denial of discharge to a debtor in bankruptcy is an extraordinary measure. This is so due to the judge's constant awareness of one of the fundamental purposes of U.S. bankruptcy law—to provide an honest but financially distressed debtor with a fresh start. The burden of proof required of a party objecting to a debtor's discharge is not only reposed upon the objectant but also is a rather serious undertaking which must be demonstrated by a preponderance of the evidence. Allegations of improprieties conducted by a debtor must be substantiated through both credible and persuasive evidence, as opposed to conjecture and speculative charges.

Herein, Looney, primarily focuses the Court's attention on the Debtor's successful reputation as a major real estate developer in the eastern United States prior to his bankruptcy filing. Very little explanation or evidence was adduced by Looney, however, which would persuasively explain why the Debtor scheduled no assets against reported liabilities of $150 Million at the time of his bankruptcy. More than conjecture and innuendo is required to meet an objectant's burden of proof in a § 727(a) adversary proceeding. A creditor objecting to a debtor's receipt of a general discharge under § 727(a)(2) of the Code must show, precisely, how the debtor has committed inappropriate conduct which intentionally hindered, delayed or defrauded a creditor or an officer of the bankruptcy estate who is charged with the execution of prescribed statutory duties, or has intentionally transferred, removed, destroyed, mutilated, concealed, or has caused others to commit such proscribed conduct respecting the debtor's property within one year of the bankruptcy filing, or property of the estate after the bankruptcy petition is filed. See, 11 U.S.C. § 727(a)(2)(A) and (B). The evidence presented by Looney fails to make this required showing.

2. Notably, the Debtor's spouse is not a co-

## The Complaint

Looney alleges that the Debtor and his wife engaged in a systematic scheme whereby the Debtor's income was "delivered and turned over" to the Debtor's wife (Complaint, ¶ No. 4). He also alleges that the Debtor's business interests "produced hundreds of thousands of dollars of income each year" to the Debtor which purportedly had "substantial equity and value." Id., ¶ No. 3. Other allegations charge the Debtor's wife with giving no consideration for funds she received from the Debtor and that the funds in her possession were wholly attributed to the Debtor's earnings.[2] Id., ¶ No. 5. Looney also alleges that the Debtor owned assets which were not disclosed in his bankruptcy petition schedules. Id., ¶ No. 6. Lastly, Looney alleges that "It appears that the Debtor may have engaged in a scheme to fraudulently divest himself of assets "by causing" some assets to be surrendered or turned over ..." to others. Id., ¶ No. 8. In response, the Debtor entered a general denial to these and other allegations. See, Answer.

An examination of the evidence reveals that Looney has not established proof to show that the Debtor has intentionally committed any of the conduct proscribed under § 727 of the Bankruptcy Code.

## The Testimony

The eighty-two year old Debtor currently resides in Boca Raton, Florida with his wife. He was examined extensively at trial, however, no pretrial depositions were taken of him. Since 1986, his health condition has deteriorated due to diabetes, heart problems, cataract operations, and kidney failure. Unrefutedly, those health conditions have caused him a loss of employability during the past two years. Previously, he earned his livelihood as a general contractor and developer of numerous government-owned facilities. He also built several other office complexes during his career. (Debtor, Direct).

debtor in the underlying bankruptcy case.

He was last employed by a company known as IDC which was a fully chartered corporation. Upon advice of legal counsel, IDC was formed in 1994 or 1995. Its business purpose was to provide consultancy services to the construction industry. (Debtor, Cross–Exam). His wife, Sylvia, is the president, director and sole shareholder of IDC. He is an officer but not a director of IDC. Unrefutedly, since April of 1996, he has received no income from IDC. (Debtor, Direct). The Debtor's only other stated income source is his monthly Social Security entitlement in the amount of $1,300.00. He last worked for IDC for compensation three or four years ago. (Debtor, Direct). He was not a signatory on any of IDC's bank accounts. He does not recall if he performed services for IDC in 1997, but testifies that IDC owed him nothing in 1998 or presently. (Debtor, Direct). When employed by IDC, he deposited his checks into his personal bank account. (Debtor, Cross–Exam). Although never inquired into by the Plaintiff at trial or during any discovery, it is significant to note that the Debtor had scheduled liabilities of $150 Million. The Debtor voluntarily explained that those liabilities were attributed to substantial losses experienced by several of his failed projects which were foreclosed upon wherein he had personal guaranties on outstanding bank debts. (Debtor, Direct). Most of the losses incurred on the failed projects were reportedly due to rent-up costs, advertising, overhead, and interest payments. Id.

*Personal Bank Account*

The Debtor's personal bank account was maintained at Nations Bank. He closed that account in 1996 once it had been garnisheed completely by unnamed creditors. He did not open another bank account for fear it, too, would be garnisheed. (Debtor, Cross–Exam). He also closed his safe deposit box in 1996 at Nations Bank for the same reason. Id.

Among the Plaintiff's numerous Complaint allegations, he alleged that the Debtor received a substantial salary from his business interests and has attempted to shield that income from his creditors (Complaint ¶ No. 4). To support that allegation, he exhibited the Debtor's joint 1996 federal income tax return Form 1040 which indicates that the Debtor reported income of $25 Million. See, P–20. What he failed to note, however, is Line 17 of the same tax return which clearly shows that the Debtor reported losses of some $32 Million for the same tax period. Looney exhibited no other tax returns or other evidence to support this particular allegation. Further, the testimony revealed that the Debtor's tax returns were prepared by his tax accountants in New York. The only witnesses called for testimony by the Plaintiff was the Debtor and Looney, himself. No examination was made by the Plaintiff of any of the Debtor's accountants either at trial or during the discovery period.

Maitland Properties, Inc. (MPI) was one of several business interests in which the Debtor was formerly engaged. Looney alleges that the Debtor's $75 Thousand proceeds from the sale of his interest in MPI in 1996 was not disclosed in his petition's Statement of Financial Affairs (SFA). The record does not provide support for the allegation. Question No. 1 of the SFA is captioned "Income from Employment or Operation of Business." Therein, the inquiry seeks such income data ... "from the beginning of this [the current] calendar year to the date this case was commenced." As acknowledged in Looney's Complaint, the Debtor filed his petition for voluntary relief under Chapter 7 on February 13, 1998. The Debtor testified that he sold any interest he had in MPI in 1996 for $75 Thousand. As such, that income was beyond the reportable period required in SFA No. 1 and, consequently, there was no concealment of income in this regard.

Looney's counsel also inquired regarding a $16,500.00 deposit and a credit in the amount of $8,500.00 reported on the Debt-

or's bank statements from his personal account at Nations Bank.Exh. P–27. To the extent that such amounts, may have been wages, they, too, were nonreportable items under SFA Question No. 1, as they were beyond the required report period. In this regard, the Debtor's bank statement of March 5, 1996 showed a deposit ($16,500.00), while the Debtor's April 3, 1996 bank statement showed an $8,500.00 credit. To the extent that such amounts were wages of the Debtor's, which was not clearly shown by Plaintiff, they would be nonreportable items. Additionally, those dollar amounts, if they were qualifying "transfers", are beyond the statute of limitation period set forth in § 727(a)(2) of the Code. The same is true respecting bank statements of IDC showing transfers to the Debtor's personal accounts in the amounts of $16,500.00 on February 21, 1996, in addition to an $18,000.00 deposit to his account on April 2, 1996. See Exh. P–28. Unequivocally and unrefutedly, the Debtor testified he has received no income from his employer, IDC, since April of 1996.

 The test for construing § 727(a)(2) was carefully enunciated in *Marine Midland Bank, N.A. v. Mollon,* 160 B.R. 860 (M.D.Fla.1993). For a party to prevail under § 727(a)(2), the complaining party must prove: (1) a transfer occurred; (2) that the property transferred was property of the estate; (3) that the transfer occurred within one year of the bankruptcy petition filing; (4) that, at the time of the transfer, the debtor possessed a requisite intent to hinder, delay, or defraud a creditor. Further, as determined by the Eleventh Circuit, the mere conversion of nonexempt property is not considered to be fraudulent as to creditors. There must be some extrinsic evidence of fraudulent intent. *In re Levine,* 134 F.3d 1046, 1049 (11th Cir.1998). Briefly stated, these required elements have not been fully established by Looney. Nor has he presented any extrinsic evidence to show fraudulent intent by the Debtor. More-over, he has proved no conversion of nonexempt property.

 Looney made much effort to show that the Debtor concealed assets by not reporting his monthly Social Security income. That, too, must fail. Upon cross-examination, the Debtor testified that he receives Social Security benefits totaling $1,300.00. This information, indeed, was not reported under his petition SFA as required. It was reported on his federal income tax return (P–20). Clearly, under § 541 of the Bankruptcy Code which defines estate property, those benefits are exemptible estate assets and should have been reported on the Debtor's SFA. See, *In re Devall,* 704 F.2d 1513, 1515 (11th Cir.1983). It is not found, however, that his failure to make such a required disclosure was done knowingly and intentionally by the Debtor. The Debtor's legal counsel conceded at trial that, if the nondisclosure in this regard was determined to be improper, it was due to an erroneous belief on the part of his law firm that Social Security benefits were a nonreportable SFA item due to its exempt nature. That erroneous belief on the part of the Debtor's counsel, although improper, is not to be imputed as wrongful and intentional misconduct committed by the Debtor under these circumstances. As this Circuit noted earlier, Social Security benefits are properly included in a debtor's bankruptcy estate under Code § 541(a) as it includes "all legal or equitable interests of the debtor in property as of the commencement of the case". Id. Notwithstanding that definition, those benefits may be exempted from the estate upon a properly claimed exemption filed by the Debtor pursuant to § 522(d)(10)(A) of the Code. See, *U.S. v. Devall,* 704 F.2d 1513, 1515 (11th Cir. 1983), citing, *In re Buren,* 4 B.R. 109 (Bankr.M.D.Tenn.), aff'd, 6 B.R. 744 (M.D.Tenn.1980); *In re Fischer,* 4 B.R. 517, 518. The nondisclosure made by the Debtor in this regard was both unintentional and is immaterial since those bene-

fits are exempt from the Debtor's bankruptcy estate.

 Concerning Plaintiff Looney's § 727(a)(3) allegations, the initial burden of proof is upon the creditor. *In re Goblick*, 93 B.R. 771 (Bankr.M.D.Fla.1988); *In re Urban*, 130 B.R. 340 (Bankr.M.D.Fla. 1991). In the present case, Looney presented no evidence which would show that the Debtor committed any act proscribed by § 727(a)(3). No testimony offered by any witness supports an allegation that the Debtor has failed to keep or preserve any recorded information required to be maintained. At any rate, the duty to keep books and records is not absolute, and the Code does not specify what type of books, if any, the debtor must keep or preserve. *In re Boone*, 236 B.R. 275, 281 (Bankr. M.D.Fla.1999).

 Section 727(a)(4)(A) effectively denies a general discharge to a debtor who has knowingly and fraudulently made a false oath or account in connection with the bankruptcy case. Herein, Plaintiff Looney, by a preponderance of the evidence has failed to offer sufficient proof to make the requisite demonstration. The subject matter of a false oath is "material" and sufficient to bar a general discharge if it bears a relationship to a debtor's business transactions or to the estate, or concerns the discovery of assets, business dealings or the existence and disposition of his property. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984). The allegations raised by Looney are serious allegations which, if true, would certainly preclude a discharge of the Debtor. Sufficient evidence, however, was not demonstrated by him to prove the charges.

 Similarly, Looney failed to establish the requisite proof to deny the Debtor a discharge under § 727(a)(5). Specifically, he failed to show where the Debtor failed to explain satisfactorily any loss of assets or deficiency of assets to meet the Debtor's liabilities. The Eleventh Circuit in *Chalik*, again, provides

sound guidance. The initial burden of proof is upon the party opposing the discharge. Once the creditor establishes the basis for its objection, the burden shifts to the debtor to explain satisfactorily the loss. *Chalik, supra*, at 695. The major defect in the case at bar is the Plaintiff's failure to establish a basis for his objection. At most, Looney offered nothing more than pure speculation or conjecture regarding § 727(a)(5)'s requirement. Consequently, the burden never shifted to the Debtor to explain any losses. Through direct testimony, however, he did explain the failure of numerous projects of business interests he formerly owned and how he was the subject of several lawsuits. Additionally, the Debtor explained how he amassed $150 Million in liabilities due to various personal guaranties on a substantial amount of bank debt. None of this testimony by the Debtor, who did not bear the initial burden of proof, was refuted by the Plaintiff with any credible and persuasive evidence. Thusly, Looney failed to establish a basis for denying the Debtor a discharge under § 727(a)(5).

In summary, Plaintiff Looney failed to demonstrate by a preponderance of the evidence where the Debtor had committed any of the proscribed conduct addressed under § 727(a) of the Bankruptcy Code. Specifically, Looney has not shown by a preponderance of the evidence where the Debtor violated §§ 727(a)(2), (a)(3), (a)(4) or (a)(5), as alleged. In brief, if the Debtor has concealed or otherwise disposed of estate property, it has not been proved by this creditor.[3]

Accordingly, judgment is hereby granted in favor of the Defendant, Irving Feldman. The Complaint is dismissed. Each party is to bear its respective costs and fees.

IT IS SO ORDERED.

---

**3.** It is noted that the officer who is statutorily charged with administering the Debtor's bankruptcy estate, the case trustee, filed no action contesting the Debtor's discharge.